Argued May 7, affirmed June 2, 1914.

## RADFORD v. FIRST NAT. BANK.

(142 Pac. 362.)

**Interpleader—Right to Maintain Suit—Interest of Plaintiff.**

1. Since the plaintiff in interpleader is required to be a disinterested stakeholder of the fund or property, he must, in his complaint, admit the true amount owing.

> [As to general principles of interpleader and when it is to be maintained, see notes in 35 Am. Dec. 695; 91 Am. St. Rep. 593.]

**Interpleader—Pleading—Answer.**

2. The defendants in interpleader cannot defend the suit by merely alleging in their answer that the fund is greater than that admitted by the complaint, but they must also prove that the fund is greater than plaintiff admits.

**Stipulations—Obligation and Effect.**

3. A stipulation in a suit, in the nature of a bill of interpleader, that each of the parties waives all objections to the sufficiency of the pleadings and consents that the court sit as a court of equity and try all of the issues, each party reserving the right to appeal, authorizes the court to try all material matters alleged in the pleadings.

**Interpleader—Evidence—Weight and Effect.**

4. In a suit in the nature of a bill of interpleader, the evidence *held* to show that the plaintiff owed only the amount which he admitted in his complaint.

From Union: John W. Knowles, Judge.

This is a suit in the nature of interpleader by William Radford, Stephen Radford, and Charles W. Radford, partners doing business under the firm name and style of Radford Lumber Company, against the First National Bank of Union and the Powder Valley State Bank. From a decree in favor of the First National Bank of Union, the Powder Valley State Bank appeals. Affirmed.

For appellant there was a brief over the name of *Messrs. Cochran & Eberhard,* with an oral argument by *Mr. George T. Cochran.*

For respondents The Radford Lumber Company, there was a brief with an oral argument by *Mr. John S. Hodgin.*

For respondent The First National Bank of Union, there was a brief with oral arguments by *Messrs. Crawford & Eakin.*

In Banc.    MR. JUSTICE RAMSEY delivered the opinion of the court.

The plaintiffs are a partnership having their princi-pal office at North Powder, Union County. The defendants are banking corporations, one doing business at Union and the other at North Powder.

On or about November 1, 1910, the plaintiffs entered into a contract with C. H. Hall, who was engaged in the manufacture and sale of lumber at Telocaset, in Union County, by the terms of which contract said Hall agreed to sell to the plaintiffs all lumber to be cut from certain lands described in said contract, and he agreed to continue the business until all the timber on said lands should be manufactured into lumber and the lumber delivered to the plaintiffs in accordance with said contract. What Hall was to do and the prices to be paid him are set out in the contract.

Hall was to pay J. L. Caviness, the owner of the timber, $2 per thousand feet stumpage for all said timber so to be manufactured into lumber. Hall had cut considerable of said timber into logs, and some of it was manufactured into lumber, and some of the lumber was by him delivered to the plaintiffs on the cars as provided by the contract.

In May, 1911, Hall absconded, leaving his contract unperformed and some unpaid debts. He owed the defendants the First National Bank of Union one note for $800, and interest thereon from April 7, 1911, at

the rate of 10 per cent per annum, and another note for $823, and interest thereon from May 1, 1911, at the rate of 10 per cent per annum. When Hall absconded, he owed also the defendant the Powder Valley State Bank a promissory note for $880, dated May 1, 1911, and to be due in 30 days from its date, and bearing interest from that date at the rate of 10 per cent per annum.

The Powder Valley State Bank had a claim also against Hall for $400, for and on account of a check for $400, which said Hall drew upon the United States National Bank of La Grande, and which the Powder Valley State Bank cashed for him. Said check was presented to the United States National Bank of La Grande for payment, and payment thereof was refused, etc.

The Powder Valley State Bank brought an action against Hall to recover said sum of $400, for the money paid him on cashing said check, and, in said action, attached in the hands of the plaintiffs all funds of every kind and character in the possession of the plaintiffs herein and owing or belonging to said Hall.

On May 1, 1911, when said Hall made said promissory note to the Powder Valley State Bank, as stated, *supra,* for said sum of $880, for the purpose of securing the payment of said promissory note, he assigned to said bank all his right, title, and interest in the sums due from the plaintiffs on estimates Nos. 1 and 2, said estimates aggregating 204,356 feet of lumber, on which there was said to be a balance due of $4 per thousand feet from the plaintiffs to said Hall, etc.

The fourth, fifth, sixth, seventh, and eighth paragraphs of the complaint are as follows:

IV.  "That, under and in pursuance of said contract and agreement between the plaintiffs and the said C.

H. Hall, the latter delivered to the plaintiffs on the 6th day of April, 1911, upon said mill yard at Telocaset, 169,075 feet of lumber at the agreed price of $8.50 per M., and an estimate was rendered thereon to the said C. H. Hall by plaintiffs showing a balance due him of $929.92; on April 29, 1911, the said C. H. Hall sold and delivered to the plaintiffs at said mill yard 28,970 feet of lumber at $10.00 per M., and 137,200 feet of lumber at the agreed price of $8.50 per M., and estimates were rendered thereon by plaintiffs to said C. H. Hall showing a balance due him of $202.79 and $754.60 (not $754.50), all of said estimates aggregating the sum of $1,887.31.''

V. "That the said C. H. Hall, on the 26th day of November, 1910, gave plaintiffs a written order to forward all money due him on said estimates that should thereafter be made in his favor to the First National Bank of Union, to be placed to his credit, which order was duly accepted by plaintiffs; that plaintiffs are informed and verily believe, and therefore allege, that said estimates, after they were delivered to the said C. H. Hall in settlement aforesaid, were, on or about the dates of their delivery to said C. H. Hall, sold and transferred or delivered to the First National Bank of Union, one of the defendants herein, as collateral to secure loans of 85 per centum of their face value, or estimate, and that said bank is now the holder thereof; that said order of C. H. Hall to pay said estimates to said First National Bank of Union has never been revoked by him, and said bank has demanded payment of the whole amount due on said estimates from payments.''

VI. "That on the 10th day of May, 1912, and before the plaintiffs had made settlement or payment with the said C. H. Hall, or his assigns, all moneys due the said C. H. Hall, or his assigns by the plaintiffs, and especially the sum designated in said estimates, were attached and garnished by the Powder Valley State Bank, one of the defendants herein, in an action prosecuted by said bank against the said C. H. Hall, in the Circuit Court of the State of Oregon, for Union

County; that said attachment and garnishment has not been released, and said cause is still pending."

VII. "That the defendant the First National Bank of Union has instituted an action at law against the plaintiffs in the Circuit Court of the State of Oregon, for Union County, to recover the sum of $1,897.31 alleged to be due said defendant from these plaintiffs by virtue of an assignment to said First National Bank of Union, of said estimates as collateral for advancements made, together with the interest on said estimates from May 9, 1911, and said defendant in said action has attached certain lumber of plaintiffs at North Powder, Union County, Oregon; that service of summons is now being published in the Union Scout, but is not yet complete."

VIII. "That, since the making of said estimates and balance due from the plaintiffs to the said C. H. Hall, plaintiffs incurred necessary expenses in the settlement of the business affairs between them under said contract and agreement, amounting to the sum of $137.04, which said sum is now due from said C. H. Hall to plaintiffs."

The defendants answered, denying parts of the complaint and setting up their respective claims. The reply denied most of the new matter in the answer. At the beginning of the trial, the parties entered into the following stipulation in open court:

"It is hereby agreed by and between the parties to this suit and their respective counsel that each of the parties waives all questions as to the sufficiency of the pleadings herein, and that they expressly consent that the court sit as a court of equity, in this suit in intervention, and try out and determine all of the issues between the parties hereto and enter such judgment and decree as it deems proper in the case; each party reserving the right, however, to appeal the case to the Supreme Court, if, on the merits, he considers his client wronged or injured in any manner by decree of this court."

The Powder Valley State Bank by its said answer alleged that the amount of money in the hands of the plaintiffs belonging to C. H. Hall was $2,952.21 instead of $1,887.87, as alleged in the complaint.

1, 2. At the argument considerable was said as to what can be adjudicated in a suit of interpleader, or in a suit in the nature of an interpleader. The remedy by interpleader was not unknown to the common law, but its application was confined within very narrow limits. The right to a remedy by interpleader was recognized in *detinue quare impedit* and writs of right of ward: 2 Story's Equity Jurisprudence, §§ 801, 802; 23 Cyc., pp. 2, 3.

23 Cyc., page 3, defines a bill of interpleader thus:

"A bill of interpleader is defined to be a bill exhibited where two or more persons severally claim the same debt, duty, or thing from the complainant, under different titles or separate interests; and he, not claiming any title or interest therein himself, and not knowing to which of the claimants he ought of right to render the debt or duty or deliver the property, is either molested by an action brought against him, or fears that he may suffer injury from their conflicting claims, and therefore prays that they may be compelled to interplead and state their several claims, so that the court may adjudge to whom the matter or thing in controversy belongs."

The same volume, on page 29, defines a bill in the nature of a bill of interpleader thus:

"A bill in the nature of a bill of interpleader is distinguished from a bill of interpleader proper in that there are grounds of equitable jurisdiction other than the mere right to compel the defendants to interplead, and the complainant may seek some affirmative equitable relief."

Volume 8, of Wait's Actions & Defenses, pages 821, 822, speaking of a strict interpleader suit, says:

"The only relief which the complainant in a strict interpleader suit can have, in case he shows he is entitled to the remedy, is permission to bring the thing about which the defendants are disputing into court, and thus be discharged from all liability in respect to it, * * and the only relief which can be given a defendant in such a suit, as against the complainant, is a dismissal of the complainant's bill, which may always be obtained on answer alone."

2 Daniell's Chancery, Pl. & Pr. (6th ed.), page 1572, referring to bills in the nature of bills of interpleader, says:

"Although a bill of interpleader, strictly so called, lies only when the party applying claims no interest in the subject matter, yet there are many cases where a bill in the nature of a bill of interpleader will lie by a party in interest, to ascertain and establish his own rights, when there are other conflicting rights between third parties."

11 Ency. Pl. & Pr. 479, says:

"In a bill of interpleader, the plaintiff asks only that he may be at liberty to pay the money or deliver the property to one to whom it of right belongs, and be protected against the claims of both. But a bill in the nature of a bill of interpleader will lie by a party in interest, to ascertain and establish his own rights, where there are other conflicting rights between third persons."

In *Baltimore & O. R. Co.* v. *Arthur,* 90 N. Y. 237, the court says:

"But here the sum admitted to be due is not the sum for which Arthur (the creditor) sues. The plaintiff (in the interpleader) claims to retain from it an alleged indebtedness for freight. The amount due cannot be the subject of controversy, in an interpleader suit, and this difference between the debt claimed by the defendant, and the sum which the plaintiff is willing to pay, presents an insuperable objection

to its prosecution, for as to so much it does not admit title or right of payment in either claimant.''

In *Williams* v. *Matthews,* 47 N. J. Eq. 196 (20 Atl. 261), the facts were that Matthews had built for Williams three houses, and various persons served notices on Williams claiming portions of the balance due Matthews under the contract. Williams filed a bill of interpleader, making Matthews and the persons claiming parts of the amount due Matthews parties, and alleging that there was due Matthews $1,416.13. Matthews and the other defendants answered, claiming that the amount due was not $1,416.13, but $2,050.

The plaintiff filed a motion to strike out all parts of the answer that claimed that the amount owing was more than the complainant admitted, and, passing on these motions, the court says *inter alia:*

''Portions of these answers objected to question the amount stated in the bill to be due on the contract. While it is not a matter over which an issue can be framed for settlement in a suit of strict interpleader, it may be inquired into to ascertain if the action is maintainable (that is, as the only proper decree is that the defendants interplead or the bill be dismissed); the decree cannot adjudge this or that amount due, but the amount offered to be paid into court may have a controlling influence in deciding if the complainant is simply a disinterested stakeholder, and for that purpose be inquired into. * * If, as was alleged on the argument, the complainant made his own adjustment of his own claims, made allowances to himself and struck his own balance, over which he asks the defendants to litigate, they are not to be concluded by his averring that such sum is the amount due, and that he is indifferent. They may, by answer, show he is not so, and is interested in the matter of the controversy, * * I am of opinion that the defendants are entitled to aver and prove any facts which show that the complainant is not entitled to maintain his action as a

strict interpleader, and will advise an order denying so much of the motion as procéeds against those parts of the answer respectively taking issue with the averment of the bill as to the amount due."

In *Maxwell* v. *Frazier,* 52 Or. 187 (96 Pac. 550, 18 L. R. A. (N. S.) 102), the court says:

"Where a bill of interpleader is filed, the practice is, first, to determine whether such bill will lie. If it will not, it is useless to go further. If it will, then, upon bringing the property in dispute into court, the complainant is discharged from further liability, * * and issues cannot be made against him, except as to whether the case is a proper one for interpleader. But the court will require the defendants to interplead and litigate their respective rights to the fund in dispute."

We understand the case last cited to hold that, in case of interpleader, the only issues that can be made up against the plaintiff are those intended to show that the case is not one proper for an interpleader.

In interpleader cases, the plaintiff is required to be a disinterested stakeholder of the fund or property in question, and, if he is not, he cannot maintain the suit. If the fund in dispute is a debt that he owes, he must, in his complaint, admit the true amount owing. If he owes $1,000, it will not suffice to admit only $500. On the other hand, the defendants cannot defeat the suit for interpleader by merely alleging in their answers that the debt or fund is greater than the amount alleged by the complaint or bill. In order to defeat the suit for interpleader on that ground, they must allege and prove that the fund in the plaintiff's hands is greater than he admits. By such a showing, it is made to appear that he is not a disinterested stakeholder, and hence is not entitled to maintain the suit.

The authorities cited, *supra,* show that there is material difference between a strict bill of interpleader and a bill in the nature of a bill of interpleader. The latter has a much wider scope than the former. What we have said, *supra,* does not apply to a bill in the nature of a bill of interpleader.

3. We think that the stipulation that the parties entered into at the beginning of the trial and set out, *supra,* authorized the court to try all material matters alleged in the pleadings.

4. The question to be finally determined is: How much money did the plaintiffs owe C. H. Hall? The court below found that they owed him $1,887.31, which is the amount that the plaintiffs admitted that they owed him.

We have read and examined the evidence. Mr. C. H. Brown was the business manager of the plaintiffs, and transacted for the plaintiffs practically all the business with Hall. Brown has had a long experience in the lumber and sawmill business. His evidence made 70 pages of the testimony, and he was cross-examined at great length. His evidence and that of Mr. J. L. Caviness are substantially all the evidence tending to show the amount that was owing Hall, except some exhibits offered in evidence.

Although Brown was an employee of the plaintiffs, he appears to have been a reasonably fair witness. He went into all the facts in detail. It is not necessary to review the evidence. It is sufficient to say that we have considered it, and find that a strong preponderance of the evidence shows that after charging the plaintiffs with everything that they should be charged with, and deducting therefrom everything which they should be credited with, they owe C. H. Hall a bal-

ance of only $1,887.31. Hall had absconded, and hence his evidence was not taken.

We find that the First National Bank of Union is entitled to receive said sum of $1,887.31, less the costs and disbursements of the plaintiffs in the court below.

The decree of the court below is affirmed.

AFFIRMED.