Argued at Pendleton October 30, affirmed December 24, 1918, rehearing denied March 4, 1919.

## SMITH *v.* HOWELL.

(176 Pac. 805.)

**Crops—Personalty—Severance.**

1. When a growing crop, whether *fructus industriales* or *fructus naturales*, is severed from the realty, it becomes personalty.

**Crops—Hay.**

2. Hay harvested by foreclosure purchaser in possession pending redemption, placed in stacks, and surrounded by fence before redemption is personal property.

**Mortgages—Foreclosure Purchasers—Crops.**

3. Under Section 251, L. O. L., providing that it shall not be deemed waste for one in possession pending redemption to use the premises in the ordinary course of husbandry, foreclosure purchaser in possession pending redemption is entitled to cut hay on the premises and to convert it into personal property.

**Mortgages — Foreclosure Purchasers — Crops — "Rents, Issues and Profits."**

4. Where a purchaser at a foreclosure sale took possession of the premises and harvested hay before redemption by the mortgagor, the title to the hay was in the purchaser, subject to accounting for rents, issues and profits, which apply only to net profits and such as are of the nature of rent.

[As to duties and liabilities of mortgagee in possession, see note in 4 Am. St. Rep. 69.]

**Equity—Equity Jurisdiction—Recovery of Personal Property.**

5. Ordinarily a suit in equity for the recovery of personal property does not lie.

**Injunction—Adequate Remedy at Law—Unlawful Seizure of Hay.**

6. Wild hay being an ordinary commercial article, an action for damages for the unlawful seizure thereof, or in replevin, furnishes an adequate remedy at law so as to prevent the bringing of a suit to enjoin an unlawful seizure and use.

**Account—Right of Action.**

7. The mere fact that defendants owe some money to plaintiffs is not sufficient to justify an accounting in the absence of an allegation of complexity of accounts, or in the nature of a discovery, or that a fiduciary relationship exists, or of fraud.

**Account—Grounds—Foreclosing Defendant's Claim.**

8. A party who from the very nature of his case cannot have any recovery against defendants is not entitled to an accounting merely to have determined or foreclosed some claim of defendants against him, in the absence of other ground of equitable relief, such as settling a fiduciary relationship.

**Injunction—Grounds for Relief—Insolvency.**

9. In a suit against three defendants for an accounting and an injunction, where it is alleged that two of the defendants are insolvent, but no allegations are made as to the insolvency of the remaining defendant, a ground for equitable relief is not shown; insolvency alone not furnishing such ground.

From Harney: GUSTAV ANDERSON, Judge.

In Banc.

This is a suit to restrain the defendants from using or preventing plaintiffs' use of 750 tons of hay, and for an accounting for the use and occupation, or rents, issues and profits, for a certain parcel of land redeemed from sheriff's sale during the time the same was occupied by the purchaser thereunder. It appears that on January 22, 1918, plaintiffs filed an amended

complaint which, omitting the authorization to so file and the allegation of the corporate existence of defendant, Pacific Live Stock Company, is as follows:

"That all the dates and times hereinafter mentioned the defendants, Wellington G. Howell and Willard N. Jones, were, except as hereinafter stated, and now are the owners of the following described tract of real estate situated in Harney County, state of Oregon [omitting description]:

"That at all times hereinafter mentioned the said tract of land was, and now is surrounded with a fence, which incloses not only the said Howell tract, but also about 80 acres of land which the plaintiffs have under lease from one Horton, and commonly known as the Horton tract, and also includes several hundred acres of meander land between the said Howell tract and the said Malheur Lake, and which said meander land belongs to the Government of the United States.

"That on the 16th day of January, 1915, the said Wellington G. Howell and Willard N. Jones, for value received, duly made, executed and delivered to one C. A. Haines, their certain mortgage in writing on the above described Howell tract, to secure the payment of a debt of $10,000.00, which said defendants were then owing to the said Haines, and thereafter, and on February 26, 1915, the said mortgage was duly recorded in the records of real mortgages for Harney County, Oregon.

"That on March 18, 1916, the said C. A. Haines, as plaintiff, instituted a suit in the Circuit Court of the state of Oregon for the county of Harney, against Wellington C. Howell, Willard N. Jones and others, as defendants, for the purpose of foreclosing the above described mortgage and having the mortgaged premises sold at sheriff's sale and execution for the purpose of satisfying the said debt of $10,000.00, with interest and costs; and thereafter such proceedings were had in said court in the said suit that on the 14th day of April, 1916, a judgment and decree in foreclosure was duly rendered in said cause in favor of the said

C. A. Haines and against the said defendants in said suit, for the sum of $10,413.00, and the further sum of $740.00 attorney fees, and $20.50 costs, and which said judgment was duly enrolled and docketed in the judgment docket of said court, and in and by said decree it was adjudged and decreed that the sheriff of Harney County should sell the above described Howell tract at sheriff's sale on execution for the purpose of paying the said judgment.

"That thereafter an execution on said judgment was duly issued out of the said Circuit Court by the clerk thereof, under seal of said court, and signed by the County Clerk of Harney County, Oregon, and directed to the sheriff of said county, ordering and directing the said sheriff to sell the said mortgaged premises at sheriff's sale on execution in the manner provided by law, for the purpose of satisfying the said judgment, and said execution was duly received by the said sheriff and thereafter, and on July 22, 1916, the said sheriff, acting under said execution, did duly seize and levy upon the said Howell tract of land for the purpose of carrying out the orders contained in said execution.

"That thereafter, and on August 24, 1916, the said sheriff, after giving public notice as required by the laws of the State of Oregon, duly sold the said tract of real estate at public auction in the manner provided by the laws of the State of Oregon, to the plaintiffs herein, for the sum of $13,100.00, and did then and there, at the request of the plaintiffs, execute and deliver to the plaintiff W. E. Smith, a proper sheriff's certificate of sale for said real estate, and thereafter the said sheriff duly made and filed his report of said sale and his return on said execution with the county clerk of Harney County, Oregon, and thereafter and on October 25, 1916, the said execution sale was duly confirmed by order of the Circuit Court for Harney County, Oregon.

"That immediately after said execution sale the plaintiffs entered into possession of said premises under the said sheriff's certificate of sale, and found the said premises to consist of a tract of pasture and

hay land, but the said tract had been neglected for years and was in a run down condition, and the fences were out of repair and broken down and the said tract was open to the public range and was in no condition to produce crops, and had not produced crops for a great many years immediately prior thereto, and the taxes were delinquent upon the said tract and the title to a portion of said tract was defective, and the entire tract was in such a run down and neglected condition that it was not fit for husbandry, and the reasonable rental value of the entire tract was not worth more than $500.00 per year.

"That the plaintiffs, upon taking possession of said tract of land paid the delinquent taxes thereon and perfected the title thereto, and cleared the ground by burning dead grass and tules and furnished posts, wire and labor and repaired the fences on said premises and put the same in condition to turn livestock, and in general expended a great deal of work, labor, and money in clearing off and repairing the said premises and putting the same in a condition for producing crops, and all of which repairs were absolutely necessary to put the said premises in a cropping condition, and plaintiffs were out over $2,000.00 in such work, labor and expense, and all of which expenditures were absolutely necessary to put the said premises in proper condition to produce a crop thereon and make them fit for the purpose for which said premises had always been used.

"That plaintiffs continued to hold the said premises under their said sheriff's certificate of sale, and to farm and care for said premises until the 15th day of September, 1917, and during that period the plaintiffs, by reason of their work and labor in repairing, preparing and caring for the said premises, were able to and did cause a large crop of wild hay to grow thereon, and actually put up and harvested about 600 tons of hay on the said Howell tract, and about 100 tons of hay on the said meander lands, and about 50 tons of hay on the said Horton tract, and which said hay was and is worth from five dollars to ten dollars per

ton; and plaintiffs necessarily expended over $2,500.00 for the necessary expenses of cutting, harvesting and putting up the said crop.

"That on the 15th day of September, 1917, the defendant, Pacific Livestock Company, furnished the defendants, Wellington G. Howell and Willard N. Jones with the necessary funds for redeeming said premises, and the said Howell and Jones did then and there redeem the said Howell premises from said execution sale, by paying the plaintiffs the sum of $14,836.38, being the purchase price of said premises, with the interest, taxes, and cost of perfecting title, and the said Howell and Jones did then and there receive certificate of redemption to said property and again entered into the possession of the same, and also took possession of the said meander land and the said Horton tract, inclosed with the said Howell lands.

"That at the date of said redemption the plaintiffs had cut and severed all of the hay from the soil on all of said premises, and had the same nearly all in stacks, but the stacking of a small part of said hay was completed after the said date of redemption, and at the time said redemption was made the plaintiffs had cut from the said Howell land and stacked thereon 14 stacks of hay, containing about 600 tons, and had cut from the said meander land and stacked thereon two stacks of hay containing about 100 tons, and had cut from the said Horton tract and stacked thereon one stack of hay, containing about 50 tons, and said stacks as they were put up, were each and all separately inclosed with stock proof post and wire fence, and the material and labor for which was furnished by plaintiffs.

"That immediately upon said redemption being made the defendants, Howell and Jones, mortgaged the said Howell premises to the defendant, Pacific Live Stock Company, for $20,000.00, and had also then and there turned the possession of said Howell premises and of said meander lands and of said Horton tract, with plaintiffs' 750 tons of hay thereon, over to the said Pacific Live Stock Company under some contract

or understanding with said company, the exact terms and nature of which are unknown to these plaintiffs, but plaintiffs are informed and believe, and therefore allege the fact to be that the said corporation agreed to protect the said Howell and Jones against any claims of these plaintiffs, and to assume any obligation which the said Howell and Jones might be found to be owing the plaintiffs, and growing out of the redemption of said premises.

"That on the 16th day of November, 1917, the said Pacific Live Stock Company, for some reason unknown to these plaintiffs, served a written notice upon plaintiffs ordering and directing them to keep off from the said premises and not to come thereon, and not to touch or interfere with the hay which plaintiffs had stacked thereon, and forbidding plaintiffs to remove any of said hay from said premises, and did then and there wrongfully take possession, not only of plaintiff's hay on the said Howell premises, but also of plaintiff's hay on the said meander land and on the said Horton tract, and ever since has, and now does refuse to permit the plaintiffs to take and use any of said hay.

"That the plaintiffs have always been and are now the owners of all of said hay and entitled to the immediate and exclusive possession of the same, and also the owners of a right of ingress to and egress from the said premises for the purpose of removing said hay, and prior to receiving the said notice from the defendant company, and on or about October 1, 1917, the plaintiffs interviewed one Arthur R. Olson, who is the local agent and manager of the Pacific Live Stock Company, and asked him if the company claimed the said hay or intended to interfere with plaintiffs' removing the same, and that said Olson did then and there inform the plaintiffs that the company laid no claim whatever to the said hay and would not interfere with the plaintiffs' right to remove the same.

"That at all times during the year 1917, plaintiffs have been and are now engaged in the live stock business, and own and run about 650 head of cattle more

or less, in Harney County, Oregon, and· the climatic conditions are such in that country that during the winter months a large amount of snow falls in the Harney Valley and there is a period of severe cold for several months, and it is necessary for livestock owners to feed their stock hay from about the first of December to about the first of April of each winter, and the only available feed in Harney County, Oregon, for livestock is the hay which is produced on the lands in said country, and these plaintiffs grew and produced the aforesaid 750 tons of hay for the sole and only purpose of feeding the same to their livestock during the ensuing winter, and plaintiffs, relying upon the statement of the agent of the defendant corporation that said hay would not be tied up in litigation and would not be claimed by said company, made no other or different provisions to provide feed for their livestock during the coming winter and, had the plaintiffs known or had any reason to believe that the defendant corporation would interfere with their right to take their said hay, that plaintiffs could and would have provided other feed for the purpose of carrying their livestock through the winter, all of which was and is well known to all of the defendants.

"That the winter is now rapidly approaching, and it is absolutely necessary to feed hay to plaintiff's said livestock, and all of the other available hay for feed in the Harney Valley has been bought up and purchased by other stock men therein, and plaintiffs cannot obtain any other or different stacks of hay, either in the Harney Valley or elsewhere, for the purpose of feeding their stock during the coming winter, and if plaintiffs are not permitted to remove the said hay from said premises and feed the same to their stock, the entire 650 head of cattle owned by plaintiffs will starve and die during the present winter, and plaintiffs will suffer irreparable loss, injury· and damage.

"That the next term of Circuit Court for Harney County, Oregon, does not convene until April of 1918, and any proceeding which plaintiffs might institute in a court of law to obtain possession of said hay

would be wholly unavailing and inadequate, for the reason that the same cannot be heard and determined until April, 1918, and in the meantime the said hay would be tied up in litigation and all of plaintiffs' stock will have starved and perished, and plaintiffs have no plain, speedy, adequate, or complete remedy at law, and can only obtain relief in this court of equity.

"That at all times since the redemption of said premises the plaintiffs have been and are now ready, able and willing to account to the defendants Howell and Jones for the rents, issues and profits of said premises, and the value of the use and occupation thereof during the time the said premises were in plaintiffs' possession, and have repeatedly offered to account to said defendants for said rents, issues and profits and for the value of the use and occupation of said premises, and to pay over to them such sum as may be found due them on said accounting, but said defendants have failed and refused, and now fail and refuse to account with the plaintiffs for said possession, or to permit plaintiffs to account to them for said possession, and no accounting has ever been had of the rents, issues and profits, or the value of the use and occupation growing out of the possession of said premises by the plaintiffs, and plaintiffs now ask that such accounting may be taken by this court of equity.

"That the defendant, Pacific Live Stock Company, owns and runs several thousand head of cattle in Harney Valley, State of Oregon, and threatens to wrongfully and unlawfully convert all of plaintiffs' said hay to its own use and to feed the same to its own livestock during the present winter and deprive the plaintiffs of the same, and unless restrained by an injunction order of this court, the said corporation will wrongfully and unlawfully appropriate all of plaintiffs' said hay, including the hay grown and stacked on said meander land and on said Horton tract, and will feed all of said hay to the livestock belonging to said company and deprive these plaintiffs of the use of the same.

"That all of said hay is what is commonly called wild grass hay, and much of said hay is now standing in wet, boggy places, and unless the same is fed out some time during the present winter, the said hay will be covered by the overflow from said Malheur Lake, in the spring of 1918, and all of said hay will become moldy, rotted, and deteriorated in quality to such an extent that it will be of no value whatever as food for livestock, and unless the same can be used and consumed during the present winter the said hay will be of no value to anyone for any purpose.

"That at all times since the said execution sale and the purchase of said Howell premises by the plaintiffs thereat, the defendants and each and all thereof well knew that the plaintiffs were in the possession of said premises and that they were cutting and putting up the hay thereon, and that they were running said herd of 650 head of cattle and that they were putting up the said hay for the express purpose of feeding the same to plaintiffs' cattle during the present winter, and well knew that plaintiffs owned and claimed all of said hay, and any right which any of the defendants acquired in said premises under and by virtue of said redemption was and is subject to the rights of these plaintiffs to said hay and to the right to remove the same from the said premises.

"That the defendants Howell and Jones are insolvent and wholly unable to respond to the plaintiffs in damages, and if plaintiffs are compelled to account to said defendants and pay over to them the rents, issues and profits of said premises, while in plaintiffs' possession and the value of the use and occupation thereof, and the defendant company at the same time is permitted to wrongfully appropriate and convert all of plaintiffs' said hay the plaintiffs will suffer double loss and damage without any compensation whatever, and they will therefore suffer further injury, loss and damage in many thousands of dollars.

"Wherefore, plaintiffs demand judgment against the defendants and each of them as follows, to wit:

"(1) That a temporary injunction and restraining order may be made and issued by this court, restraining and enjoining the said defendants and each thereof and their attorneys, agents, servants, and employees from in any manner interfering with the hay mentioned in this complaint, or preventing the plaintiffs from taking and using said hay, or from in any manner preventing the plaintiffs, or either of them, from having free access to said hay or ingress thereto or egress therefrom, or from hauling their said hay off from said premises.

"(2) That an accounting may be had and taken by this court between the plaintiffs and the defendants Howell and Jones, and that a true and correct value be ascertained of the rents, issues and profits of said premises, and of the use and occupation thereof during the time the same were occupied by the plaintiffs herein, and that the amount be determined which the plaintiffs herein shall account for and pay over to the said defendants, Howell and Jones.

"(3) That upon the final hearing of this case the said temporary injunction and restraining order may be made permanent.

"(4) That the plaintiffs may have judgment against the defendants and each thereof for their costs and disbursements incurred in this suit, and that plaintiffs may have such other and further relief in the premises as to the court may seem just and equitable."

The defendants filed demurrers on the ground that the complaint did not state facts sufficient to constitute a cause of suit, or to entitle plaintiffs to the equitable relief therein sought, or any equitable relief, and on April 5, 1918, the court sustained the demurrers. Plaintiffs declined to plead further and a decree was entered dismissing plaintiffs' complaint and granting costs to defendants. Plaintiffs appeal. AFFIRMED.

91 Or.—19

For appellants there was a brief over the names of *Messrs. McCulloch & Wood* and *Mr. J. S. Cook,* with an oral argument by *Mr. John W. McCulloch.*

For respondents there was a brief over the names of *Mr. John L. Rand, Mr. E. F. Threadwell, Mr. William H. Brooke, Mr. P. J. Gallagher* and *Mr. John W. Biggs,* with an oral argument by *Mr. Rand.*

OLSON, J.—This case coming up on demurrer to the amended complaint the allegations therein, as far as this court is concerned, form the undisputed facts. The question presents itself in a two-fold aspect. First, are the plaintiffs the owners of the hay cut and severed from the realty, and, second, are the plaintiffs entitled to the equitable relief sought in this suit. As to the first point it is contended by the defendants that upon the redemption of realty from the sheriff's sale, all crops raised upon the premises during the time the purchaser under such sheriff's sale holds possession of the property, belong to the redemptioner in specie upon the exercise of his right of redemption. They base their contention upon the Oregon cases of *Cartwright* v. *Savage,* 5 Or. 397; *Fields* v. *Crowley,* 71 Or. 141 (142 Pac. 360), and *Reichert* v. *Sooy-Smith,* 85 Or. 251 (165 Pac. 1174, 1184).

In the Cartwright case the property was sold on sheriff's sale on July 26th, and immediately thereafter the purchaser harvested a crop of wheat. Action was brought by the redemptioner to recover from such purchaser, after redemption, the value of the wheat so harvested. A demurrer was interposed in the case and sustained. The plaintiff stood on his complaint and appealed. The court held that the demurrer should not have been sustained and remanded the case

for further proceedings. In that case the action was not to recover the grain harvested in specie nor was the title to the grain so harvested in question. The action was to recover the value of the crop of wheat and upon the case being remanded to the lower court the question as to what the actual value of his crop was, would naturally be determined upon the answer of defendant and the evidence later introduced.

In *Fields* v. *Crowley,* 71 Or. 141 (142 Pac. 360), the sheriff's sale was as to real property upon which buildings were located. The purchaser under the sheriff's sale took possession of the same and retained them until the redemption. An action was brought for the reasonable rental value of the hotel building, saloon, outhouses and barn located on said property. A demurrer was interposed to the complaint and sustained by the court and judgment for costs entered against plaintiffs, and they appeal. The case was reversed citing the Cartwright case and sent back for further proceedings. The clear holding of the *Fields* v. *Crowley* case, 71 Or. 141 (142 Pac. 360), is stated on page 148 (142 Pac. 362):

"But, where the purchaser takes possession of the purchased premises, and occupies, uses, or rents them, and the execution debtor redeems, the latter is entitled to recover from him the value of the rents, issues and profits of the premises during the time he has occupied, used, or rented them in the interim between the date of the sale and the redemption."

It will be noted, however, in the Fields case there is no attempt to recover in specie the product of the real property, but it is merely an action to recover the reasonable rental value of the land and its appurtenances, and for the purpose of fixing such reasonable rental

value it is alleged that the rents, issues and profits of said property amount to the sum claimed.

In the case of *Reichert* v. *Sooy-Smith,* 85 Or. 251 (165 Pac. 1174), an orchard was sold on sheriff's sale and the purchaser entered into possession and pruned and trimmed the same. Upon a redemption being made he brought suit against the redemptioner for the moneys expended by him in the care of said orchard and for the reasonable value of his services thereon. The redemptioner brought a counterclaim for use and occupation of the premises. A demurrer was interposed to the complaint and also to the counterclaim. The demurrer to the complaint was overruled and a trial was had before a jury which rendered judgment for the plaintiff. Such judgment was reversed for the reason that the court held that no purchaser at a sheriff's sale could, by making improvements on the property, charge the redemptioner with the legal duty to pay for the same upon redemption and, therefore, the demurrer should have been sustained. As to the counterclaim the case was sent back for further proceedings in that it appeared that evidence as to what was produced upon the land had been improperly excluded. It will again be noted that in this case the ownership of the farm products raised during the occupancy of the purchaser on sheriff's sale was not involved. The action was to recover on one side for expenditures and on the other for the use and occupation of the land. In none of the cases has the question of the ownership of crops actually severed from the land been involved, and the cases heretofore cited are decisive only as to the principles of law that a purchaser at sheriff's sale upon redemption must restore the property purchased; that he must account for the rents, issues and profits of the land held by

virtue of his sheriff's certificate of sale, that he will not be allowed to recover from the redemptioner for expenditures for permanent improvements or otherwise as such, and that he is not liable for waste allowed by Section 251, L. O. L.

1. It is a principle of law too well established to require extensive citation that when a growing crop, whether *fructus industriales* or *fructus naturales,* becomes upon severance from the realty personalty. In the case of landlord and tenant it has even been carried so far as by use of a fiction to hold some of such crops personalty even before severance.

2, 3. It will be noted in the case at bar that the hay was harvested and placed in stacks and surrounded by fencing before the redemption. It was as clearly personal property as if it had been removed entirely from the premises. During all the time it was being converted from grass attached to the land, to hay, personal property, the plaintiffs were rightfully in possession of the land. They had a right to cut this hay by virtue of our statute, for it is stated in Section 251, L. O. L.:

"It shall not be deemed waste for the person in possession of the property at the time of sale, or entitled to possession afterwards, during the period allowed for redemption, to continue to use it in the same manner in which it was previously used; or to use it in the ordinary course of husbandry; or to make the necessary repairs to buildings thereon; or to use wood or timber on the property thereof; or for the repair of fences; or for fuel in his family while he occupies the property."

In the conversion of grass to hay a substantial portion of the value of the finished product is the labor expended in so converting it. This is more true of the

cutting of natural wild or marsh hay than in the harvesting of cultivated grasses. This question has come up in a great many jurisdictions over the right of a tenant holding over after the expiration of his lease to hold crops gathered in specie or as to the rights of a purchaser holding under a canceled contract. Of this nature are the cases of *Johnston* v. *Fish*, 105 Cal. 420 (38 Pac. 979, 45 Am. St. Rep. 53); *Stockwell* v. *Phelps*, 34 N. Y. 366 (90 Am. Dec. 710); *Brothers* v. *Hurdle*, 32 N. C. 490 (51 Am. Dec. 400); *Churchill* v. *Ackerman*, 22 Wash. 227 (60 Pac. 407), which are all quoted in the last case cited, as follows:

"That the title to crops follows actual possession, and not a right to possession merely, is well established; and that when a person in adverse possession severs crops before recovery, the title thereto is in the former, is equally well established. In *Stockwell* v. *Phelps*, 34 N. Y. 363 (90 Am. Dec. 710), it was held that when a party in possession of land, claiming adversely to all others, sells to a third party the hay cut therefrom during such occupancy, the legal title thereto passes to his vendee, as against the party claiming title to said premises, although not in possession: See, also, *Brothers* v. *Hurdle*, 32 N. C. 490 (51 Am. Dec. 400); *Dollar* v. *Roddenbery*, 97 Ga. 148 (25 S. E. 410); *Hinton* v. *Walston*, 115 N. C. 7 (20 S. E. 164). In *Page* v. *Fowler*, 39 Cal. 412 (2 Am. Rep. 462), it is held that, while the owner might recover for use and occupation, he could in no case be held to be the owner of the crops grown and actually harvested on the land by the defendant while in possession. The facts in this case are in principle identical with the facts in the case at bar. In that case it is said: 'It is undoubtedly true that at common law a person who had been ousted from land might, after a recovery and re-entry, maintain his action of trespass for the mesne profits and for waste, for the reason that, after re-entry, the law supposes he has always been seised, and the acts of the defendant were a continuous trespass

upon the rightful possession of the plaintiff; but no case has been cited in which this principle has been held to make the owner of the land out of possession under such circumstances the owner of the crops grown and actually harvested by the defendant. The very fact that he may recover the rents and profits of the land shows that he cannot recover the crops; for, as was well said in the case of *Stockwell* v. *Phelps,* 34 N. Y. 363 (90 Am. Dec. 710), the owner of the land, in such cases, does not recover the value of the crops raised and harvested, but the value of the use and occupation of the land, and the annual crops of grain and grass, which contain both the value of the use of the land and the labor of the farmer, do not, under such circumstances, belong to the owner of the land. It would be an oppressive rule to require everyone who, after years of litigation, perhaps, may be found to have a bad title, to pay the gross value of all the crops he has raised. To the same effect is *Johnston* v. *Fish,* 105 Cal. 420 (38 Pac. 979, 45 Am. St. Rep. 53), where the rule is laid down that the doctrine applies to volunteer crops, as well as to crops seeded the same year in which they were gathered.

"In the case at bar the wheat harvested was from a volunteer crop, the original crops having been planted by the defendant. The testimony shows that the first crop was a partial failure, and that it was thought best to allow the second crop to volunteer; but the testimony is undisputed that the volunteer crop was taken care of by the defendant, that it was kept fenced and protected from the ravages of stock, that some $35 worth of poison was purchased and distributed in the ground on which this wheat grew for the purpose of protecting it from destruction by squirrels which infested that part of the country. So that we think that the fact that it is a volunteer crop does not distinguish it in principle from any of the cases cited, and is, as is shown, in that respect identical with the case last above quoted. Quotation is made in this case from *Brothers* v. *Hurdle,* 32 N. C. 490 (51 Am. Dec. 400), where the court said: 'But when one who is in the

adverse possession gathers a crop in the course of husbandry, or severs a tree or other thing from the land, the thing severed becomes a chattel; but it does not become the property of the owner of the land, for his title is divested. He is out of possession, and has no right to the immediate possession of the thing; nor can he bring any action until he regains possession. The owner of the land cannot sue for the thing severed in trover or detinue as a chattel, for it is not his chattel. It did not become so at the time it was severed, and the title to it as a chattel cannot pass to him afterwards, when he regains the possession, by force of the *jus postliminii.*' In *Faulcon* v. *Johnston,* 102 N. C. 104 (9 S. E. 395, 11 Am. St. Rep. 737), it is held that the owner of land held adversely is not the owner of the crops, and cannot recover them, or their value, from one who has received and converted them,—citing *Branch* v. *Morrison,* 51 N. C. 16; *Ray* v. *Gardner,* 82 N. C. 454. If there are any cases sustaining the contrary doctrine, they have not been suggested. We think, for many reasons, that the rule announced is a just one, and therefore adopt it."

In *Aultman & Taylor Co.* v. *O'Dowd,* 73 Minn. 58 (75 N. W. 756, 72 Am. St. Rep. 603), it is stated:

"The fact that the owner of the premises may recover the rents and profits of the land for its being withheld, precludes the idea of his right to recover the crops. It is the value and use of the land which the owner recovers, and not the fruits of the land. A contrary rule would give the owner the value of the use of the land, and the value of the labor of the farmer in producing the crop, for the crop contains the value of both."

If such a rule is applied where the person who severs the crop from the land is essentially a trespasser, the rule should apply with particular force to the condition where a man enters under right and remains under right until after the severance of the crop from

the realty. It would be a strange rule of law that would grant greater rights to the product of his labor to a person who is a trespasser than are granted to a person in exercise of the undoubted rights granted by the statutes covering sales of real property upon execution. It is a settled principle laid down by this court that the right of redemption is merely statutory in allowing the owner of the property sold at sheriff's sale to redeem upon the paying of the amount the property was sold for with interest. We have the reciprocal provision of the statute requiring such purchaser at sheriff's sale to account for the rents, issues and profits received from any tenant in possession of the property on unexpired lease, and by the decisions in the *Cartwright* v. *Savage, Fields* v. *Crowley,* and *Reichert* v. *Sooy-Smith* cases, a clear obligation upon the part of such purchaser to account for the rents, issues and profits of such realty after he goes into possession himself. The granting of such right in itself will bar the right of the redemptioner to recover in specie the crops already harvested by the purchaser in possession. It has been held that the words "rents, issues and profits" apply only to net profits and such as are of the nature of rent: 7 Words & Phrases, 6090.

It is stated in *Bruce* v. *Thompson,* 26 Vt. 741:

"The words 'rents, issues and profits' * * cannot be construed to include annual products of the wife's land. The words have no very marked fitness to express the yearly products which are the joint results of labor and the use of the land. * * Rents, issues and profits apply only to net profits, and such as are of the nature of rent."

In *Re Vedders' Will,* 15 N. Y. Supp. 798, it is said:

"Rents and profits of real estate mean the sum annually yielded by the same."

4. It would seem from a consideration of the above that the redemptioner has an undoubted right to secure an accounting from the purchaser at the execution sale who goes into possession of the rents, issues and profits of the real estate so possessed by him before redemption, but that the very right to secure such an accounting of rents, issues and profits excludes the idea that the redemptioner may, upon recovering the possession and title of the real property in question, also by such act transfer the title to personalty created by the purchaser in possession to himself. Such a rule would not be just or equitable. The remedy possessed by the redemptioner to secure an accounting of the rents, issues and profits now provided is ample and the holding that the crops severed are personalty and belong to the purchaser in possession, is not in conflict with the cases heretofore decided by this court. It frequently happens that the labor expended in harvesting a crop forms the greater portion of its value when so harvested, and the writer hereof remembers very distinctly clearing two acres of land for the first year's crop and sowing thereon four bushels of peas and after great labor threshing therefrom two and one-half bushels. We hold, therefore, that the title to the hay after it was severed from the realty was in the plaintiffs in this suit.

It remains, then, to be determined whether plaintiffs are entitled to the relief sought and in the form of a suit in equity. An examination of the complaint shows that the requested relief in equity consists first, of a request for an injunction preventing the defendants from interfering with plaintiffs or using the hay and allowing the plaintiffs to go upon the land and remove the hay for their own use. Second, that the Circuit Court in Harney County will not meet until in April,

and that no plain, speedy or adequate remedy would be afforded in law which would secure to them the possession of the hay in time to prevent their cattle from starving during the winter of 1917–18, and, third, for an accounting between plaintiffs and defendants as to the rents, issues and profits of the land retained by defendants. It is alleged further that defendants Howell and Jones are insolvent. It will be noted that the order sustaining the demurrer and the decree thereon was handed down on April 5th, and entered on April 9, 1918. This would seem to bring the case within the rule laid down in *Weigand* v. *West,* 73 Or. 249 (144 Pac. 481). The main ground for the interposition of equity set forth in the complaint is, that the hay is absolutely necessary for the feeding of plaintiffs' cattle during the winter of 1917–18. The decision appealed from was rendered in the spring of 1918. Justice BURNETT, in the last-mentioned case says:

"The question is whether the plaintiff has properly conceived his remedy in the present case. Giving the allegations of the complaint their full value, yet it appears that the trespass complained of happened before the commencement of the suit. Injunction is a preventive remedy, and is designed in general to stay the lawless hand before it strikes the blow. We do not, however, impound the water for the wheel after it has run by the mill. It is vain to lock the door of the stable after the horse has been stolen, and it is equally useless to insure a house after it is burned. The trespass having been accomplished before the commencement of the suit, it would be of no utility for a court to enjoin what has already passed."

5, 6. In the present case the retention of the case in equity is almost a moot question, as at the time of the decision on the demurrers appealed from on April 5,

1918, the damage—if any—had been done, the winter had passed, and the relief by injunction would be practically of no avail, but passing this point it would seem none of the allegations of plaintiffs' complaint bring the suit within the grounds of equitable jurisdiction. It is held as a general principle that a suit in equity for the recovery of personal property does not lie ordinarily: *Parsons* v. *Hartman,* 25 Or. 547 (37 Pac. 61, 42 Am. St. Rep. 803, 30 L. R. A. 98); *Moore* v. *Halliday,* 43 Or. 243 (72 Pac. 801, 99 Am. St. Rep. 724); *Wolfer* v. *Hurst,* 50 Or. 218 (91 Pac. 366). The property must be of some unique value, for instance a personal memento or relic or heirloom that cannot be replaced. Wherever the property is of such a nature as can be compensated in damages the law affords an adequate remedy. Wild hay is certainly an ordinary commercial article, and the allegations of the complaint do not take it out of that class, nor show any reason why the damages for unlawful seizure thereof cannot be compensated for in a proper action. The contention that the court does not meet until April, therefore equity relief should be invoked, does not give equity jurisdiction as the action of injunction is no more speedy than that of replevin; moreover a temporary injunction should be used only to maintain the *status quo,* to prevent wrongdoing or interference with the possession. It is ordinarily not the proper use of the remedy of a temporary injunction to, by means thereof 1, take property from the possession of another and cause the destruction or use of the same before the rights thereto can be adjudicated.

7, 8. As to the relief sought by way of an accounting it is clear from the case of *Reichert* v. *Sooy-Smith,* 85 Or. 251 (165 Pac. 1174), that plaintiffs could not possibly recover any money in an accounting from

the defendants. The only decree that could be entered in such an accounting would be in favor of the defendants. Standing alone the request for an accounting on the part of the plaintiffs will not be sufficient to take the case into equity on the ground solely that the plaintiffs seeking the relief may owe some money to defendants. There is no allegation herein as to complexity of accounts between the parties, or in the nature of a discovery, or that a fiduciary relationship exists between the parties, nor any allegation of fraud: 1 R. C. Law, 223, 224; 1 Corpus Juris, 633, 634. It is true an accounting may be had as incidental to other equitable relief but in this case other relief sought will not bring this case into equity. A plain, speedy and adequate remedy at law by way of replevin of the hay, or by way of damages for the conversion thereof by the defendants, existed. It does not seem that an action for an accounting can be brought by a party who, from the very nature of his case, cannot have any recovery against the defendants, and the defendants be thus forced to come into court and obtain in effect a judgment against him. Such defendants may not at that time be ready to make any claim against the person so seeking an accounting. They have a right to waive their claim if they so wish or to take their time within the statute of limitations to bring either an action or suit. It would certainly be a novel doctrine to hold that if a person suspects that some other person may have a legal claim against him, either in contract or tort, that he could hale the party into court and require him to set up or prove whatever claim he might have. Stripped of its nonessentials it amounts to a person bringing a cause into court in order that some real or fancied claim against him may be adjudicated in spite of the wishes of the other

party. Of course in cases where the plaintiffs seek some affirmative relief by way of quieting title to realty or the settling of a fiduciary relationship, an entirely different case presents itself.

9. It is alleged by plaintiffs that two of the defendants are insolvent but no allegation is made as to the insolvency of the other party. It has been held, however, in this jurisdiction in *Parker* v. *Furlong*, 37 Or. 248 (62 Pac. 490), that insolvency alone is not a ground for equitable relief.

It is strongly contended by plaintiffs that as to the 150 tons of hay not cut upon the land sold at sheriff's sale the complaint states a good cause of suit. Under our holding, as above set out, there is no difference between the ownership of plaintiffs in the hay cut on the land sold on sheriff's sale and that cut elsewhere. It all belongs to the plaintiffs. The title to the same could have been tried out in a replevin action, or an action at law could have been brought for its conversion by defendants, and a plain, speedy and adequate remedy is afforded at law to the plaintiffs.

AFFIRMED. REHEARING DENIED.

HARRIS, J., absent.