Submitted on briefs October 22; reversed November 18, 1930.

## HOOPER *v.* CARLSON ET AL.

(293 P. 410)

*E. L. Elliott* of Klamath Falls for appellant.

*H. C. Merryman* of Klamath Falls for respondents.

BROWN, J. Or. L., § 10230, provides:

"Any person who shall  *  *  *  operate a threshing machine, or harvester, or header, and who shall harvest, head, or thresh any grain or other crop for another therewith, shall, upon filing a statement provided for in this act, have a lien upon such grain  *  *  *  for the contract price or reasonable value of the heading, harvesting or threshing of said crop  *  *  *."

This section further provides that the lien shall attach from the date of the commencement of the harvesting of the crop.

Section 10231 provides for filing lien statement, and for the recordation thereof. It reads, in part:

"Any person * * * entitled to a lien under this act shall, within forty-five days after said heading, harvesting or threshing is completed, file in the office of the county clerk of the county in which the grain or other crop was grown, a statement in writing, verified by oath, showing the amount and quantity of grain headed, harvested or threshed, the price agreed upon * * *, or in case there be no specific agreement, then the reasonable value of said heading, harvesting or threshing, the name of the person or persons for whom the threshing was done, and the description of the land upon which the same was grown."

This section further provides that if the person entitled to a lien shall neglect to file the same within forty-five days, he shall be deemed to have waived his right thereto.

Section 10232 provides that the lien created by the act shall have priority over all other encumbrances upon such grain, except the lien of the laborers "for labor performed in heading, harvesting or threshing said crop."

Section 10233 provides that the life of the lien shall be two months, unless a suit is brought within that time to enforce it.

Section 10234 relates to the foreclosure of the lien, and provides that the person who shall file the claim for lien shall be entitled to recover "the cost and expense of making and recording said lien," and attorney's fees.

It is manifest from the record herein that, in making, filing and recording his lien statement, the lien claimant complied with all the provisions of the lien law.

As to the finding of the court that, upon the sale of the grain to defendant Martin Bros. the same was "co-mingled with other grain of like nature so that identification of same is impossible," after a careful consideration of the facts we are constrained to hold that that finding is not sustained by the record. The holder of the grain made no such contention. In fact, it came into court and admitted the receipt of the grain, but made no claim that it had been mingled with other grain, or that its identity had been destroyed.

It is asserted that, after the plaintiff had harvested and threshed the grain, the owner of the land upon which it was grown surreptitiously removed it therefrom, transported it to Klamath Falls and sold it to defendant Martin Bros., a corporation. As stated above, the grain was, in truth, sold to this defendant; and, after the suit was instituted and all defendants served with process, the defendant corporation tendered into court "the sum of $350.74, being the balance due E. B. Marshall or P. C. Carlson, as their interests may appear herein." Thereafter, the corporation filed a complaint the object of which was to require the claimants to interplead, wherein it is alleged that defendant Carlson delivered to it 325 sacks of grain, which it purchased, "and on which there is now due and owing the sum of $350.74." It is alleged that Marshall claims an interest in that sum for the care and cultivation of the grain; that Hooper claims an interest therein by virtue of a duly recorded lien against the grain, and Carlson by virtue of a crop mortgage.

■ The plaintiff in interpleader is required to be a disinterested stakeholder of the fund or property, and he must allege in his bill the true amount owing. See

*Radford v. First National Bank,* 71 Or. 84 (142 P. 362) ; *Whitney v. Day,* 86 Or. 268 (168 P. 295) ; *Statesman Publishing Co. v. Foltin,* 87 Or. 65 (167 P. 782). However, neither of the defendants named in the bill of interpleader filed by the corporation appeared in answer to the allegations contained therein, and no further action was taken in the matter of interpleading. In view of this fact, we do not discuss the right of the corporation arising under its bill requiring the defendants named therein to interplead.

■ The amount of the indebtedness due from Marshall to Hooper for cutting and threshing the crop of grain hereinbefore referred to is not questioned. Nor is there any question concerning the validity of the law and its application to this foreclosure proceeding. The terms of the statute are plain and clear, to the effect that the lien created by it and possessed by the plaintiff is prior in right to, and supreme over, all other encumbrances or liens upon such grain, except the lien of the laborers, for labor performed in heading, harvesting or threshing the crop. In the suit to foreclose the lien upon the grain Marshall made default. Clearly, the plaintiff is entitled to recover from the defendants the sum of $205 for harvesting and threshing the grain, and he is likewise entitled to recover $11.40, being the amount incurred by him in making and filing his statement of lien, and $50 attorney's fees. It follows that the decree rendered by the trial court should be reversed.

Let the moneys tendered into court by Martin Bros. be impressed with a lien for the satisfaction of the amount due the plaintiff in accordance with this opinion.