#### FOR THE

### FOURTH JUDICIAL CIRCUIT.

#### NOVEMBER TERM, 1854.

---

PRESENT,

HON. ISAAC F. REDFIELD, CHIEF JUDGE.
HON. PIERPOINT ISHAM, } ASSISTANT JUDGES.
HON. MILO L. BENNETT, }

---

### KENDALL BRUCE & WIFE *v.* HIRAM THOMPSON.

*Marriage Settlement. Construction of Married Woman's Act.*
*Comp. Stat. Chap. 68 § 15.*

A marriage settlement incomplete by reason of a want of trustees, is only an agreement to make a settlement, and will not, at law, exempt the annual crops of the wife's land from an execution against the husband.

By the language of the married woman's act, (Comp. Stat. Chap. 58 § 15,) the annual product of the wife's land is not exempted from the husband's control, or from his creditors.

TRESPASS for taking and carrying away of the separate property of the said Martha, wife of said Kendall, four tons of hay, one cow, and twenty bushels of oats.

Plea, not guilty, and trial by the court.

The parties agreed upon the following facts.

That some time prior to January, 1845, the said Kendall Bruce and one William Bruce, were justly indebted to one John Gray, of Montpelier, in the sum of eighty dollars, specified in a promissory note, dated the 7th day of February, 1842, and signed by the said William and Kendall Bruce, and made payable to the said Gray or order, on which note the said Kendall Bruce was surety. That some time in the month of February, 1848, the said Gray commenced a suit against said Kendall Bruce alone, on said note, and recovered judgment on the same, before a justice of the peace.

And it was further agreed, that heretofore, to wit, on the — day of ————, 184-, the said Kendall Bruce, now about sixty years of age, intermarried with one Martha .Nash, of East Montpelier, and that said Martha was possessed of property to the amount of about $————, which she inherited from her father, whose estate was then in process of settlement, of which estate one John Mellen was administrator; and prior to the intermarriage of said Kendall and Martha, they executed a contract called a marriage settlement; that soon after the marriage of said Kendall and Martha, the said Martha purchased a small farm, with a house and barn on the same, in the town of Plainfield, of the value of about $500 ; and the said Kendall and Martha went into possession of the same, and lived and carried on, the same farm, as husband and wife usually live and carry on, lands owned by the wife (the said Kendall doing most of the out-door work on the farm,) and occasionally help was hired, what other help was necessary to carry on said farm ; and the said Martha doing the work in the house. And it is further agreed, that in the spring of 1851, the said Mellen, administrator, did deliver to the said Martha Bruce, two cows, as her own property, which were purchased at her request for their support on said farm, and charged the same to her on her account against the estate of her father—which two cows immediately went into the possession of the said Kendall Bruce and Martha Bruce on said farm, and from that time up to the

26th day of December, 1851, remained on the premises owned by the said Martha, and in the possession of said Kendall and Martha, aforesaid ; but the said Kendall has made no claim thereto, but has abided by said marriage settlement. And it is further agreed, that during the season of 1851, the said Kendall and Martha raised on said farm about four tons of hay, more than sufficient to keep one cow and ten sheep through one winter, and did raise twenty bushels of oats more than ten bushels of grain exempt from attachment by law—which said four tons of hay, twenty bushels of oats, and said two cows, on the — day of ———, A. D. 1851, were on said farm, and under the care of said Bruce and wife, as aforesaid. And it is further agreed, that on the day and year last aforesaid, the said Gray prayed out his writ of attachment in due form of law, against said Kendall Bruce—which writ was made returnable to Washington County Court, November Term, 1851, on the judgment rendered by said justice in his favor, against said Bruce, as aforesaid; which writ was put into the hands of Hiram Thompson, constable of Plainfield, to serve, who legally served said writ, by attaching as the property of said Kendall Bruce, one of said cows and about four tons of hay, and twenty bushels of oats, being the same oats and hay before mentioned, which was not exempt by law in favor of debtors ; which writ was duly served and returned and entered in court, when such proceedings were had ; that at the November Term, of said court, 1851, the said Gray recovered judgment against the said Kendall Bruce, for $———, and costs of suit; and on the first day of December, 1851, the said Gray prayed out his writ of execution on the judgment aforesaid, for the debt, damages and costs aforesaid, dated the first day of December, 1851, all in due form of law— which execution was put into the hands of the said Thompson, on the 22d day of December, 1851, and within thirty days from the rendition of said judgment, and the said Thompson, on the said 26th day of December, 1851, took said cow and four tons of hay, and twenty bushels of oats, and posted the same in due form of law, and sold the same at said Plainfield, on the 12th day of January, 1852.

The County Court, September Term, 1852,—PECK, J., presiding,—rendered judgment for the plaintiffs to recover for the hay and oats the sum of $——— and costs, upon the facts agreed, and

decided that the plaintiffs were not entitled to recover for the cow.

Exceptions by defendant.

*J. A. Wing* for defendant.

The only question raised in this case is, are the crops raised by the husband on the real estate of the wife, after they are severed from the freehold, liable to be attached on the separate debts of the husband?

By the common law, all the wife's personal property, by the marriage, vests *eo instanti* in the husband, and he becomes liable to pay all her debts and liabilities and all gifts to the 'wife after marriage, never vest in the wife, but in the husband. 2 Blacks. Com. 433, 435, and cases cited. *Parks & Co.* v. *Cushman & Trustee,* 9 Vt. 320. *Crosby's Admr.* v. *Otis,* 32 Maine 256.

And the same rule exists in chancery. *Chase et al.* v. *Palmer et al.,* 25 Maine.

The use of the wife's real estate belongs to the husband during coverture, and the products of the same go to the husband or his personal representative. *Mattocks* v. *Stearns & Wife,* 9 Vt. 326. *Shaw, Admr.* v. *Patridge,* 17 Vt. 626.

The wife has no interest in law in the annual products of her lands, unless given to her by the statute. Comp. Stat. 403 § 15.

Do the words *rents, issues* and *profits,* in our statute, mean the annual products of the land when raised by the husband? We claim not. By the same section it is expressly enacted, that the husband cannot sell and convey away the *rents, issues* and *profits,* which are thus protected, except by joint deed of husband and wife.

If the construction claimed by plaintiffs is correct, then the husband cannot sell any part of the crops, unless his wife join in a deed, and have the same acknowledged and recorded, &c.

Statutes in derogation of the common law, are to be construed strictly, and cannot be extended further than the express wording of the statute will warrant. *Paine* v. *Ely et al.,* 1 D. Chip. 37.

*Merrill & Willard* for plaintiffs. .

The statute of 1847, exempts from attachment, on the sole debts of the husband, the " rents, issues and profits of the real estate of any married woman, and the interest of her husband in her right

in any real estate," &c.; and the property sued for in this case, is the issues and profits of the lands belonging to the wife.

The purpose of the statute is obvious, which is to secure to the wife, the entire use and control of her real estate, as against the creditors of the husband, and the language used is clear and plain, and beyond doubt broad enough to carry out this purpose. The words descriptive of the estate and property exempted, *are the very words* that the law uses in describing the husband's interest in the wife's estate. To confine their scope to that part of his interest in her lands, which is technically *real estate*, as now claimed, would give a construction foreign to the ordinary and popular sense of the language, and wholly strange to persons of ordinary intelligence. And it would require a lawyer, astute, and possessed of a strong proclivity for dissection, to discover and start a construction such as claimed.

The rule, that the common and popular meaning is to be given to the words of a statute, unless another one is apparent obtains in England, and is founded in reason and good sense. It is more reasonable and *imperative* in a free government. Is there anything, then, compelling a technical or limited construction?

The ante-nuptial contract, bars the right of the husband to those crops, as well as to the cow. The old, refined, but absurd doctrine, that the marriage is a revocation of the marriage settlement, has long since been discarded in equity, and the husband is held as trustee for the wife, where there is no intervention of trustees.

The same rule should hold in law, and the court of law should resume a jurisdiction, which was yielded on a point of legal fiction, and not drive suitors to a court of equity.

The opinion of the court was delivered by

REDFIELD, Ch. J. This action is brought to recover the value of property, sold by the defendant as an officer, upon execution, for the sole debt of the husband, the property being the annual products of the wife's land, in possession, and carried on at the expense of the husband. The parties, before their intermarriage, made, in contemplation of such an event, what they considered a marriage settlement which was a stipulation between themselves, merely, and without the intervention of trustees, that the wife

XXVI  48

Bruce & Wife *v.* Thompson.

should enjoy her separate property, without interference on the part of the husband. The statute law of the state in force, at the time of the crops being grown, and which it is claimed, controls the matter was as follows : " The rents, issues, and profits of the real estate of any married woman, and the interest of the husband, in her right in any real estate, shall, during coverture, be exempt from attachment, or levy of execution, for the sole debt of the husband, and no conveyance by such husband, of such rents, issues, and profits, &c., shall be valid, unless by deed of husband and wife," executed according to the general laws of the state.

It is claimed, first, that the marriage settlement, as it is called, was sufficient to exempt the annual crops of the wife's land from attachment and levy of execution, on the husband's debt. But such· a contract, without the intervention of trustees, will not, at law certainly, have that effect. Such a contract so executed, is incomplete. It is, at most, but an agreement to make a suitable marriage settlement. And the parties, beneficially interested, whether the wife or children, may, on application to a court of equity, compel the execution of such a settlement, as the court shall deem reasonable, which will then be effective to protect the property at law. 2 Story's Eq. Jurisp. § 983, 999.

In regard to the effect of the statute, which is similar to those of some of the other American states, there seems to have been, to some extent, a popular impression, that it would exempt the annual products of the wife's land, from the control of the husband or his creditors. Such was the decision of the court below, and such the impression of one member of this court, at the first argument. But a careful examination of the terms of the statute, cannot fail, we think, to convince all, that the words used have no very marked fitness, to express the yearly products of land, which are the joint results of labor and the use of the land.

Rents, issues and profits, more commonly, in the books, certainly ·signify a chattel real interest in land, a kind of estate growing out of the land for life, or years, producing an annual or other rent. And in this statute, it is so connected with " the interest of the husband in her right in any real estate," so as to induce ·the the suspicion, certainly, that the legislature supposed they were only limiting the husband's control over such estate, as he would upon the marriage, acquire in the wife's land, and really doing

nothing more than securing to the wife and family, the use of the wife's chattels real, and the husband's estate in her lands, whether during coverture or by the courtesy. These estates, (although growing out of the wife's lands,) by the common law, upon the marriage, become vested in the husband, and he may sell, assign, mortgage, or otherwise dispose of them. 2 Kent's Com. 113. They may, too, probably be levied upon, for the sole ebt of the husband, or might have been before this statute. And the statute of this state, giving the right generally to levy upon leasehold estates, uses almost the same terms as the statute under consideration. "The rents, issues, and profits of real estate, leased for life or years, shall be liable to be taken on execution;" thus showing that the two statutes, might, very likely, have adopted the same form of expression, *de industria.* Rents, issues, and profits, too, apply only to net profits, and such as are of the nature of rent, which is, as every one understands, a *reditus* or return by some one, holding the land of another, for which he *owes* such *return.* Now the husband holds the wife's land, in no such tenure, but in his own right as husband, *owing a return* to no one. It is observable, too, that the legislature, in providing a homestead for the family, and securing its annual products for their support, use appropriate and specific language by providing that the homestead, "and the yearly products thereof," shall be exempt from execution, and that the husband shall not alienate or mortgage the homestead, but no provision is made against *conveying the yearly products* of the homestead.

And if we regard, in the statute under consideration, the terms "rents, issues, and profits," as equivalent to *yearly products,* we must all allow, that this statute has, in express terms, required the transfer of such yearly products, to be by deed of the husband and wife jointly, and to give effect to such provision, we must hold, that any other mode of alienation, even for value, cash in hand, if you please, or necessaries for the family, or to pay the very laborers upon the land, is altogether void.

The very use of the term conveyance, in the statute, with reference to this interest, shows the probable application of the term to some estate in the realty, for it is scarcely supposable, that the legislature would have used such a term, requiring it to be executed, with all the solemnities of other deeds of real estate, for the transfer of mere personal chattels.

It may be supposed by some, perhaps, that this construction gives less adequate protection to the wife's property, which seems of late to be regarded as a very cherished object by all. But we can only say, it affords all the protection which the law gives at present, and to carry the protection the length claimed, would certainly be attended with serious inconvenience, and often produce injustice, and for one, I am ready to say, I have no expectation, the legislature ever supposed they were making any such provision, or that they ever will, so far as the conveyance or transfer of the yearly products of the wife's land is concerned.

Judgment reversed, and case remanded.