MIDDLETON, J.
On August 5, 1918, the defendant in error, Nat Smith, and his wife, Annié Smith, conveyed to the plaintiff in error, L. D. *478 Crabtree, by deed of general warranty, a certain farm situate in this county, “together with all the privileges and appurtenances to the same belonging and all the rents, issues and profits thereof.”
Growing on the farm at the time of this conveyance was a crop of corn which had been planted and cultivated by one Darey McCain, who was in possession of this farm and continued in possession thereof until after the corn crop was harvested in the fall and who, under his contract with the owner Smith, was entitled to two-thirds of said crop divided in shock, the remaining one-third being Smith’s share as his rent, or at least a part of his rent for the premises. It appears from the record that when the crop matured both Smith and Crabtree claimed the owner’s or landlord’s share, which controversy resulted in this litigation. Smith claimed the corn by reason of a parol reservation made at the time the deed was executed, and which he was permitted in the lower court to establish by oral evidence. Crabtree not only denied such parol agreement but insisted that evidence of the same was inadmissible as under the express term of the grant made in the deed this corn passed to him. The lower court found in Smith’s favor, and if the evidence was properly admitted by which the parol reservation claimed by him was shown we would not be inclined to interfere with the judgment, as the evidence clearly sustains his contention.
The single question, therefore, before us is whether or not the admission of this evidence contravened the general rule against the admission of oral testimony to contradict, modify or vary the terms of a written contract.
We do not question the proposition that in this state at least growing crops may be reserved by a parol agreement from the operation of a deed for the real estate on which they are grow-in, notwithstanding the further fact that such crops will pass with a grant of the land as a part thereof in the absence of such reservation. This principle was established by the case of Baker v. Jordan, 3 Ohio St. 438, and rests primarily upon the theory that such crops are regarded generally as personal property and if the parties to a deed treat such crops as personalty and contract by oral agreement accordingly, evidence of such agreement does not contradict the deed but is consistent therewith. Mani- *479 f estly this rule may not apply where the deed by its express terms treats such crops as a part of the realty, and plainly and by language subject to no doubt passes them with the realty to the vendee. The deed considered by the court in Baker v. Jordan, supra, the grants and conveys only real estate, which the grantee is to have and to hold, with its appurtenances. No reference whatever is made in that deed to the “rents, issues and profits” of the land and there is no grant of the same, with the real estate, as in the instant ease. Can we, therefore, give full effect to this deed, as the court did to the deed in Baker v. Jordan, and regard it as conveying only the real estate and not including the corn crop in question? We think not. This corn, or the share in controversy, was rent for the use of the land. While rent is ordinarily payable in money, and in a technical sense the right to receive it may be considered an interest in the realty, yet it is the common understanding in this section and everywhere that, in the case of a cropper that portion of the crop he gives for the use of the land is considered as rent. Lamberton v. Stouffer, 55 Pa. St., 284. In this ease it is said that,
“The red/itus or rent of a cropper being a portion of the crop, falls due and is payable only when the crop is harvested. This is the universal understanding. ’ ’
Further, it is held in that case that,
“Grain sown in one year and harvested in the next is the issues and profits of the year in which it is harvested. ’ ’
Attention is directed to the case of Bruce v. Thompson, 26 Vt., 741, in which it is claimed a different interpretation is given to the terms “rents, issues and profits,” but it is clear that the court in that case did not consider these terms under the circumstances presented here, but only in the sense in which they were used in a statute. Moreover, in that case it is said:
“Rents, issues and profits and such as are of the nature of rent, which is as everyone understands a rediius or return by some one holding the land of another for which he owes such return. ’ ’
There is no difficulty in bringing the subject of this suit within the scope and meaning of “rent” as defined by that court.
*480 Smith’s share of the corn was at least a part of the issues of the farm in 1918, and also rent which was accruing at the time the deed was executed, although not due and payable until cut and in shock.
Upon that theory then may it be excluded from the terms “rents, issues and profits” as employed in the deed? The grant was present, as well as future. It passed all of Smith’s immediate rights and there is nothing in the language used by which it could be limited in its operation to the ‘ ‘rents, issues and profits” of some other and future year.
The effect of a grant of ‘ ‘ rents, issues and profits ” in a deed was before the court in Wilhoit v. Salmon, 146 Cal. 444 [80 Pac., 705], In that case one Jane Salmon executed a deed in escrow to be delivered at her death, but reserving in the deed a life estate in the lands conveyed. At her death the land was held by another under a contract for grain rent, and a dispute arose between her personal representatives and the grantees in the deed as to the disposition of the crops growing at her decease. In discussing the operation and force of the grant of all the rents, issues and profits aforesaid the court say:
“When Jane Salmon made her conveyance to the appellants, it was for her to determine the extent for which she should transfer her property to them. * * * If she saw fit by the terms of her deed to cut off the common law incidents of a life estate— the right to emblements — by words clearly having that effect and operation, that was her right. And this is what, by the express terms of her deed, she did. To the fullest extent possible, she conveyed to her grantees all her interest in the land, ‘together with the rents, issues and profits thereof. ’ She divested herself of all existing and future rights in the property, except solely the right to retain the use and occupancy of the premises, and take and receive the rents and profits during her life time. * * * * in her grant to them the language was broad and comprehensive enough to deprive her of all common law incidents of a life estate, and we see no room for contention that it did not. The clause in her deed granting to appellants the premises, with-the ‘rents, issues and profits thereof,’ is entirely incompatible with any construction which would support the contention of respondent that the right to the ‘rents’ of the premises was reserved to the grantor as a common law incident to her life estate. To so hold would be to render such clause meaningless and in *481 operative. It would be idle to suggest that by it the grantor intended to convey only such crops to her grantees as the latter might sow after obtaining possession on her death. They would take those by virtue of their ownership of the land, and independent of any such provision in the deed. They could, how.ever, only take the crops which were sown by her while life tenant, or to which she would be entitled, by virtue of such clause in their deed, and it was undoubtedly the intention of the grantor to effect that purpose — the only one which the provision would be pertinent to accomplish, and which we think it did. ’ ’
If the grant of “all the rents, issues and profits” made by Smith in his deed is to be regarded at all and given any meaning whatever, it disposed of all his interest in the growing crop of corn and passed it to the grantee, Crabtree. Any parol agreement to the contrary was and is not consistent with the deed, and testimony by which such agreement is sought to be established is not admissible. This conclusion may not be in harmony with the intention of the parties to the actual contract as understood by both the grantor and grantee, but this is not an action in equity to reform a deed and the court will look only to its plain provisions to ascertain the intention of the parties. Cleveland Co-op. Stove Co. v. Cleveland & P. Ry. Co., 44 O. C. C. 236, 23 C. C. (N. S.), 260.
Judgment reversed and case remanded for a new trial.
Walters and Sayre, JJ., concur.