**In re Karsten Heinrich-Jurgen ARRIENS, dba Mark Antony Hotel, Marilyn Garden Apartments, Debtor-in-possession.**

**Bankruptcy No. 682–07514.**

United States Bankruptcy Court, D. Oregon.

Oct. 1, 1982.

David L. Moore, Medford, Or., for debtor.

## MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

Debtor-in-possession, as a sole proprietor is the owner of various Oregon and California properties, including the Mark Antony Hotel in Ashland, Oregon. The hotel prop-

erty is represented as being encumbered by a first trust deed to Heritage Bank [Heritage] and second and third mortgages to Charter First Mortgage, Inc. [Charter], fourth mortgage to the Oregon Bank, and a personal property tax lien to Jackson County, Oregon.

The debtor-in-possession filed his Chapter 11 proceeding on June 4, 1982.

A controversy arose between the debtor-in-possession and Heritage and Charter concerning use of proceeds from room rentals and sale of services in which these secured creditors assert a security interest.

Charter filed a Petition for the Sequestration of Rents for Turn-over of Rents to Secured Parties, which was immediately followed by the debtor-in-possession's Application for Authority to Use Cash Collateral.

The debtor-in-possession claims that Heritage is adequately secured and Heritage offered no evidence to controvert evidence offered in support of that claim. Charter urges that it is not adequately protected by its junior mortgages on the hotel and other properties owned by the debtor-in-possession.

Before the Order for Relief, Heritage had commenced a proceeding in the Jackson County Oregon Circuit Court for foreclosure of its trust deed; naming also Charter and others holding interests on the property as defendants. In that proceeding, which was stayed by the Order for Relief, Charter on May 27, 1982 had secured an order to show cause to other defendants in that foreclosure action why a receiver should not be appointed on behalf of Charter to collect all rents, issues and profits and to take possession of the real and personal property known and operated as the Mark Antony Hotel. The show cause hearing was set for June 7, 1982, and stayed by the June 4, 1982 Order for Relief.

The creditor relies on covenant Eleventh of the Mortgage by which the mortgagor assigned to Charter "all rents, issues, income and profits derived from the mortgaged premises . . . as additional security" and authorized the mortgagee to enter into and take possession of the mortgaged premises in the event of default and collect such rents, issues, income and profits.

The mortgagee at the time of the Order for Relief had not so entered into the premises, but chose to proceed under covenant Thirteenth which gave leave to the mortgagee without regard to the value of the mortgaged premises or adequacy of security for the debt to apply to any court having jurisdiction for the appointment of a receiver to manage and control said mortgaged premises and property.

That proceeding was stayed by the Order for Relief.

Charter then proceeded in this case as above noted to seek in this Court sequestration of rents for turnover of rents to secured parties. The mortgagor contends that the rents and profits are not cash collateral because until the taking of possession or the appointment of receiver or foreclosure, the mortgagee has no rights in them.

Section 86.010, O.R.S. permits the mortgagor to assign such rents and profits and allows enforcement of such assignments but such enforcement must, of course, be in accord with the provisions of the agreement. In this case the allowable possession has not occurred, and the alternative action for the appointment of the receiver has been cut off by the stay.

The relief sought in this Court by Charter is sequestration of the assigned rents and profits and order for their turn-over, or alternatively for prohibition of the use, sale or lease of the property securing the obligation unless adequate protection is provided. The mortgagor debtor-in-possession has applied for authority to use the cash collateral although contending that Charter does not have a valid lien thereon. The assignment created a lien which under the facts of this case cannot be enforced apart from relief from the automatic stay. The debtor-in-possession has clearly shown a need for the use of the property and the rents and profits therefrom if there is to be a successful reorganization.

Although the Court is not persuaded that values testified to by the mortgagor concerning properties securing the obligation to Charter are not optimistically reached and reflective of the self-interest of the witness, no contrary evidence was offered, and even substantially discounting the values represented would establish an equity cushion sufficient to fully secure Charter.

The essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing of a reorganization case and the confirmation of a plan of reorganization or dismissal which the automatic stay is designed to accomplish in appropriate situations. See *In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 823 (Bkrtcy.S.D.N.Y.1982) and *In re Alyucan Interstate Corp.,* 12 B.R. 803 (Bkrtcy.D.Utah 1981).

Delay in the use of the money secured by the collateral above the amounts in default need not trigger relief from the stay although in some cases capitalization requirement may be appropriate.

The quantitative approach to equity cushion treatment to the exclusion of other factors is inconsistent with the Congressional intent that each case be treated on its facts. See House Report 95–595, 95th Congress 1st Sess. (1977) 338–40, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6295, wherein the report states:

> "The section specifies four means of providing adequate protection. They are neither exclusive nor exhaustive. They all rely, however, on the value of the protected entity's interest in the property involved. The section does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles. It is not intended that the courts will develop a hard and fast rule that will apply in every case. The time and method of valuation is not specified precisely, in order to avoid that result. There are an infinite number of variations possible in dealings between debtors and creditors, the law is continually developing, and new ideas are continually being implemented in this field. The flexibility is important to permit the courts to adapt to varying circumstances and changing modes of financing."

The Court is not obliged to fashion *sua sponte* a mechanism which it believes will adequately protect the secured creditor. *In re Monroe Park,* 17 B.R. 934, 941 (D.C.D. Del.1982). It is noted, however, that in these proceedings the debtor-in-possession has not proposed any means of providing adequate protection nor of preventing diminution of the value of the lien in the face of continuing interest accruals, other than the continuation of the existing liens.

The exclusive time to file a plan by the debtor-in-possession is almost expired.

It is Ordered that the debtor may use the cash from the rents and profits to operate the hotel until the confirmation of a plan or conversion or dismissal of the case, or unless relief from the automatic stay be granted or the stay modified or conditioned in the event of a filing of a complaint for relief of the automatic stay.

This Memorandum Opinion contains the Court's Findings of Fact and Conclusions of Law and pursuant to Bankruptcy Rule 752 they will not be separately stated.

Order consistent herewith will be entered.