**In re NENDELS–MEDFORD JOINT VENTURE, Debtor-in-Possession.**

**Bankruptcy No. 691–60245–H11.**

United States Bankruptcy Court, D. Oregon.

April 11, 1991.

---

Carolyn Wade, Eugene, Or., for debtor.

Bradley S. Copeland, Eugene, Or., for Nendels–Medford Inn.

Martha Hoffman, John Crawford, Portland, Or., for Key Bank of Oregon.

Mr. Paul Garrick, Eugene, Or., U.S. Trustee.

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

The issue this court addresses is whether revenues generated by the debtor-in-possession's business are cash collateral in which its primary lender holds a security interest. Because the court has ruled in favor of the debtor-in-possession it has not addressed further issues briefed by the parties. The parties have stipulated that this court may determine the scope of the creditor's security interest within the context of the hearing on the motion to prohibit use of cash collateral rather than through the filing of a separate adversary proceeding as otherwise required by the Bankruptcy Rules.

Petitioner Nendels Medford Inn, a limited partnership and general partner of the debtor-in-possession, Nendels–Medford Joint Venture, a general partnership, filed an involuntary Chapter 11 petition against the debtor on January 17, 1991. The petition was uncontroverted and an order of relief was entered on February 25, 1991.

On May 21, 1987 the debtor-in-possession (hereafter JV) executed a promissory note as debtor in the amount of $4,100,000 in favor of Key Pacific Mortgage Company as consideration for permanent financing for the Nendels Medford Inn. To secure the note JV also contemporaneously executed a trust deed, a General Security Agreement, and an Assignment of Rents and Leases for Security Purposes.

Since the bankruptcy filing the debtor-in-possession has continued to operate the motor inn. Key Bank of Oregon, successor in interest to Key Pacific Mortgage Company (hereafter bank), has filed a motion to prohibit use of cash collateral. It asks the court to find that it has a validly perfected security interest in all revenues generated by the operation of the motor inn, that such revenues are cash collateral within the meaning of 11 U.S.C. § 363(a), and, as the bank has not consented to use of the cash collateral as required by § 363(c)(2)(A), to enter an order prohibiting further use of such cash collateral, absent a finding of adequate protection. At the time of the initial hearing on the motion JV was not represented. However, the petitioner-general partner opposed the motion and appeared for oral argument. At the close of argument this court required further briefing on certain issues. These briefs have now been filed.

The parties agree that the motor inn generates revenue from its bar, restaurant and rooms. The parties have mentioned no other source of revenue. The parties have not supplied this court with a breakdown of the percentages of revenue generated by each source. This court will assume that the revenues are limited to these sources and that the majority of revenue is generated from the use of the motor inn's rooms.

The relevant language in the bank's security documents is as follows:

## DEED OF TRUST

"... Grantor irrevocably grants and conveys to Trustee in trust, with power of

sale, the property described on Exhibit A [legal description of the real estate] not currently used for agricultural, timber or grazing purposes, in Jackson County, Oregon, together with all appurtenances, and all existing or subsequently erected or affixed improvements or fixtures, all of which is collectively referred to as the "Property".

\* \* \* \* \* \*

PARAGRAPH 15. [of deed of trust] SECURITY AGREEMENT; FINANCING STATEMENTS.

This instrument shall constitute a security agreement under the Uniform Commercial Code with respect to any personal property included in the Property and the rents, revenues, income issues and profits therefrom (the Collateral). Grantor shall promptly execute the necessary financing statements in the form required by the Uniform Commercial Code in effect in Oregon and shall file the statement at Grantor's expense in all public offices where filing is required to perfect the security interest of Beneficiary in the Collateral. Beneficiary may, at any time and at its option without further authorization from Grantor, file copies of this instrument as the financing statement.

\* \* \* \* \* \*

PARAGRAPH 19. [of deed of trust] ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; BENEFICIARY IN POSSESSION.

As additional security hereunder, Grantor hereby assigns to Beneficiary the rents of the Property, provided that Grantor shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. Upon acceleration under paragraph 18 hereof or abandonment of the Property, Beneficiary, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by Beneficiary or the receiver shall be applied first to the payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorney's fees, and then to the sum secured by this Deed of Trust. Beneficiary and the receiver shall be liable to account only for those rents actually received.

\* \* \* \* \* \*

PARAGRAPH 22(b).

... "Deed of Trust" shall encompass the term "security agreement" when the instrument is being construed with respect to any personal property...."

GENERAL SECURITY AGREEMENT

"PARAGRAPH 1. [The debtor grants a security interest in] the following described property together with all accessories, substitutions, additions, replacements, parts and accessions fixed to or used in connection therewith, as well as the products and proceeds thereof (all hereinafter referred to as the "Collateral") [which paragraph refers to the specific collateral described on Exhibit A attached to the security agreement].

\* \* \* \* \* \*

EXHIBIT A. 1. All buildings, structures, improvements, fixtures, furniture, furnishings, appliances, machinery, and articles of property now or hereafter attached to, or used or adopted for use in the operation of, the real property (herein the "Premises") described in Exhibit B attached to the instrument with respect to which this Exhibit A is attached, including but without being limited to, all heating and incinerating apparatus and equipment whatsoever, all boilers, engines, motors, dynamics, generating equipment, piping and plumbing fixtures, ranges, cooking apparatus and mechanical kitchen equipment, refrigerators, cooling, ventilating, sprinkling and vacuum cleaning systems, fire extinguishing apparatus; gas and electric fixtures, carpeting, underpadding, elevators, escalators, partitions, mantels, built-in mirrors, window shades, blinds, drapes, screens,

storm sash, awnings, furnishings of public spaces, halls and lobbies, and shrubbery and plant, together with any and all additions, accessions, replacements and substitutions to the property described in this paragraph 1 and all proceeds and products thereof, and including also all interest of Borrower or Borrower's successors in title in any of such items hereafter at any time acquired under conditional sale contract, chattel mortgage, lease, or other title retaining or security instrument, all of which property mentioned in this paragraph 1 shall be deemed part of the realty and not severable wholly or in part without material injury to the freehold; and

\* \* \* \* \* \*

4. The right, title and interest of the Borrower in and under all leases now or hereafter affecting the premises including, without limitation, all rents, issues, and profits therefrom...."

### ASSIGNMENT OF RENTS AND LEASES FOR SECURITY PURPOSES

[The debtor] assign[s] the following described property (the "Collateral") and grant[s] a security interest therein ... All rents, leases, issues, income, profits, and amounts receivable, and all rights of Borrower with respect thereto, whether now existing or hereafter arising out of or in any way connected with the real property more particularly described in attached Exhibit "A". [legal description of the real property]

The bank's predecessor duly filed a financing statement with the Oregon Secretary of State which stated: "Covers personal property listed on Exhibit A located on the real property described on Exhibit B." Attached was a copy of Exhibit A to the security agreement and a legal description of the real property. It also filed a financing statement (for fixtures) with the Jackson County recorder which had attached to it the same Exhibits A and B.

Although this court has not been provided with a copy of the deed of trust or separate assignment of rents document which shows any recording information, it has been provided with a copy of the title insurance report which indicates that both were recorded in Jackson County, the county where the real property is located. Although this evidence is hearsay as to the truth of the fact of recording, the petitioner has not objected to its consideration by the court. Therefore the court will assume the deed of trust and separate assignment of rents document were so recorded.

The document denominated Assignment of Rents and Leases for Security Purposes was not filed with the Secretary of State.

The bank asserts that it was the intent of the parties at the time of the execution of all the loan documents that it would receive a first, perfected security interest in all of the real and personal property of the debtor, including but not limited to revenues generated from all the debtor's business operations. It further asserts that this intention can be perceived clearly from reviewing the language of all the loan documents together, which admittedly were all executed simultaneously. At the hearing on the motion no oral evidence was presented addressing the parties' intentions with regard to the scope of the property being granted to the bank as collateral. But even if this court were to find that the parties intended to include as part of the collateral granted to the bank all revenues generated from the debtor's business operations, this finding would not resolve completely the question before it. This court must also determine whether, as a matter of Oregon *law*, the parties took all the steps required to successfully carry out their intentions. The court will address these issues of fact and law by analyzing each of the security documents executed in favor of the bank in light of the standards established under Oregon law for the creation and perfection of security interests in real and personal property. *See Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) (law of the state where the property is located governs a mortgagee's right to rents). Generally these standards are well established. A notable exception is that Oregon

courts have not yet determined whether a security interest in revenues received from motel lodgings is governed by the provisions of Article 9 of the Uniform Commercial Code or whether such an interest falls within the exclusion to Article 9 which appears at O.R.S. 79.1040(10).

## DEED OF TRUST

■ Oregon law validates the right of an owner of real property to mortgage or pledge the "rents and profits" thereof. *See* O.R.S. 86.010. O.R.S. 86.715 subjects trust deeds to "all laws relating to mortgages on real property...." Under the terms of this deed of trust JV granted, for the benefit of the bank, an interest in the real property together with all appurtenances, improvements or fixtures thereto, all of which were denominated the "Property". As additional security, in paragraph 19 JV assigned the bank "the rents of the Property".

■ "Rent" is defined under Oregon law as "compensation paid for the use of a demised premises ..." *Winn v. Taylor*, 98 Or. 556, 579, 194 P. 857, 861 (1921), *citing Kaston v. Paxton*, 46 Or. 310, 80 P. 209 (1905). The verb "demise" is defined by Webster's Ninth New Collegiate Dictionary as "to convey (as an estate) by will or lease". The noun "demise" is defined in Black's Law Dictionary as "the conveyance of an estate". From the plain meaning of the language used in *Winn* this court must conclude that in Oregon the term "rents", as used in assignment clauses which appear in mortgages, deeds of trust and collateral assignment documents, is limited to payment for the right to possession, use and control of a legally cognizable interest in the referenced real estate.

■ The *Winn* definition dovetails with the language of O.R.S. 79.1040(10) which excludes from the coverage of the Uniform Commercial Code "interests in real estate", including "a lease or rents thereunder". The reference to "rents" refers back to the reference to "lease". A lease in real estate conveys a legally cognizable interest in that real estate. "A lease is a contract for the possession and profit of land by the lessee, and a recompense of rent or increase to the lessor, and is a grant of an estate in the land." *Hayden Corp. v. Gayton*, 98 Or.App. 703, 706, 780 P.2d 787, 789 (1989), *citing State Hwy Comm'n v. Rawson*, 210 Or. 593, 601–02, 312 P.2d 849, 853 (1957), *quoting Stinson v. Hardy*, 27 Or. 584, 41 P. 116, 118 (1895). The language of O.R.S. 79.1040(10) excludes no other security interests in income generated from the use of real property other than proceeds from an interest in a land sale contract.

■ Guests in a hotel or motel do not pay rent under a lease. Rather, they enter into a contract which provides them with a limited right to use the premises as mere licensees. Licensees do not acquire an interest in the realty to which the license obtains. *See* 49 Am.Jur.2d *Landlord and Tenant* § 6 (1970); *see also Lyons v. Kamhoot*, 281 Or. 615, 619, 575 P.2d 1389, 1390–91 (1978) (occupancy not subject to Residential Landlord and Tenant Act because of lack of intent to establish permanent residence).

In support of its argument that the word "rent" in O.R.S. 79.1040(10) should be interpreted to include payments made by motel guests for lodging, the bank points to the language of O.R.S. 699.005(1) and (2) wherein "rent" is the term used by the legislature to describe the payment made to "hotelkeepers" by "guests". Oregon has a number of varied statutes which address the rights and obligations arising out of the relations between landowners and third parties using their properties. There is no indication the Oregon legislature has attempted to coordinate the language of all those statutes.

This court must conclude that the language of Paragraph 19 of the Deed of Trust does not grant the bank an interest in the revenues generated from the motor inn's rooms. Nor does the language grant an interest in the revenues generated from the sale of food and beverages. Food and beverages are personal property. "Rents" is limited to revenue paid for the use of real property.

This court's conclusion, I believe, is buttressed by certain language which appears in *Security Bank v. Chiapuzio*, 304 Or. 438, 747 P.2d 335 (1987). In *Chiapuzio* the Oregon Supreme Court undertook an examination of the language and purpose of O.R.S. 79.1040(10).[1] It stated:

"The exception for real estate transactions is part of this last category of exemptions, placed in ORS 79.1040 because these transactions were already subject to a well-established body of law which Article 9 did not intend to replace.... Because the land-recording system parallels the purposes of Article 9, real estate transactions, whether they involve notes and mortgages, notes and deeds of trust, or land sale contracts, are exempted from Article 9. These transactions function to secure debts by giving the secured party a claim to real property. In the language of Article 9, these exempted transactions are identified by *function* as involving an 'interest in or lien on real estate'.... *But when the function of the transaction changes ... the purpose of excepting a real estate interest no longer applies.*"

*Id.*, 747 P.2d at 341 (emphasis added).

In *Chiapuzio* the function of the transaction changed when the secured party took a security interest in the vendor's interest in a contract of sale covering the real property rather than a security interest in the real property itself. In the matter before this court, if the bank had the intent, as it asserts, to obtain not only a lien on the real property itself but also a security interest in all the revenue flowing from the operations of the retail business operated on the real property, then at the moment the function of the bank's transaction changed from taking an interest in the real property itself to taking an interest in the proceeds from the business, the purpose behind the language of O.R.S. 79.1040(10) excepting a real estate interest from the provisions of Article 9 no longer applied.

The bank has argued that there is precedent in Oregon to support its interpretation of the rents clause in its deed of trust. For that purpose it points to *In re Arriens*, 25 B.R. 79 (Bankr.D.Or.1982) and *In re Clarke*, Case No. 685–68805–H11 (Bankr. D.Or. March 20, 1986) (unpublished). In *Arriens* the parties did not raise the issue of the application of the rents clause in the mortgage to hotel revenues and the court did not address it (nor did the court address that issue in *In re Morningstar Ranch Resorts*, 64 B.R. 818 (Bankr.D.Colo.1986), also cited by the bank for its position). *In re Clarke* is distinguishable on the facts as the revenues flowing from the property were lease payments.

■ Paragraphs 15 and 22(b) recite that the deed of trust is to serve as a security agreement under the Uniform Commercial Code "with respect to any personal property included in the Property and the rents, revenues, income, issues and profits therefrom (the Collateral)." The court interprets this quoted language as granting a security interest under the Uniform Commercial Code only to any personal property included within the definition of "Property" appearing in the deed of trust and any "rents, revenues, income, issues and profits" arising from that personal property. The only personal property governed by the Uniform Commercial Code and covered by the definition of "Property" in the deed of trust are items which could be denominated "fixtures". O.R.S. 79.1020(1)(a). Fixtures are defined under the Uniform Commercial Code as goods which become so related to particular real estate that an interest in them arises under real estate law. O.R.S. 79.3130(1)(a).[2] Beyond that the Code leaves what constitutes a fixture entirely to extra-Code law. In Oregon the courts have established a three factor test for determining when personal property becomes a fixture. *See Marsh v. Boring Furs, Inc.*, 275 Or. 579, 551 P.2d 1053, 1054

---

**1.** Although the *Chiapuzio* court was addressing a different legal issue from the one before this court it's review of the policy behind the language of O.R.S. 79.1040(10) is helpful in determining the scope of that exclusion.

**2.** The bank duly perfected its interest in fixtures by filing a copy of their financing statement with the Jackson County Recorder in the form required for fixture filings by O.R.S. 79.4020(5).

(1976). This test does not encompass the food and beverages sold at the motel. Therefore any revenues from those sales are not covered by the terms of the deed of trust acting as a security agreement. Further, because goods are fixtures only because of their physical attachment, annexation or adaption to the real property itself, and because as long as they are attached to the real property they are not of the nature of good which would generate revenue apart and aside from the property to which they are attached, it cannot logically by said that the revenues generated from the motor inn lodgings, if not "rent" flowing from the real property itself within the deed of trust's assignment of rents clause, can be "rents, revenues, income, issues and profits" flowing from the fixtures.[3]

## ASSIGNMENT OF RENTS AND LEASES FOR SECURITY PURPOSES

The language of the Assignment of Rents and Leases for Security Purposes is broader than the language in the Deed of Trust. The Assignment creates a security interest in "[a]ll rents, leases, issues, income, profits and amounts receivable, and all rights of Borrower with respect thereto, whether now existing or hereafter arising out of or in any way connected with the real property...." This court believes that the reference to "amounts receivable ... arising out of or in any way connected with the real property" may evince the parties' intent to grant the bank a security interest in collateral beyond that which this court has determined was granted through the language of the deed of trust. But this court believes that *at most* the language reflects an intent to encompass only revenue which it reasonably would be anticipated to arise directly from the actual use of the real property. It does not reflect an intent to include revenues directly arising from the sale of goods and services (in the form of the serving and sale of food and

beverages) on the motor inn premises. It may reasonably be interpreted to reflect an intent to include within its provisions the revenues generated from the motor inn's lodgings. What this court must decide is whether, under Oregon law, this broader language is successfully used to grant the bank a security interest beyond that which this court has determined was granted the bank through its "rents" clause in its deed of trust.

The language of O.R.S. 86.010, which describes the nature of a mortgagee's interest, limits its description of the flow of income off real estate which may be pledged as further collateral for the debt secured by the property to "rents and profits."

This clause appears four times in that short statute. The repetitive use of that phrase suggests that it connotes a legal interest of a specific nature.

The possible nature of that interest has been commented on in two Oregon cases. In *Smith v. Howell,* 91 Or. 279, 176 P. 805 (1918), the court held that hay grown and severed from the land was not included in the "rents, issues and profits" for which a foreclosure purchaser had to account to the redemptioner of the real property. In the discussion which led to that holding it stated:

> "[t]he words 'rents, issues, and profits' ... cannot be construed to include annual products of the wife's land. The words have no very marked fitness to express the yearly products which are the joint results of labor and the use of the land.... Rents, issues, and profits apply only to net profits and such as are of the nature of rent."

*Id.,* 176 P. at 811, *quoting Burce v. Thompson,* 26 Vt. 741.

In *Haskin v. Greene,* 205 Or. 140, 286 P.2d 128 (1955), the court had to decide whether the redemptioner of the real property could require the foreclosing purchas-

---

**3.** The court notes that to the extent the language of paragraph 15 may be interpreted to include within the trust deed's definition of "Property" the "rents, revenues, income, issues and profits" flowing therefrom, the presence of paragraph 15 is some evidence of the parties' intent to treat any income flowing out of the property, including revenue from lodgings, as personal property.

er to account for insurance proceeds paid for a fire loss to the premises which occurred during the redemption period. The redemptioner contended that the proceeds constituted part of the "rents, issues and profits" to which he was entitled under O.R.S. 23.560(3). In rejecting the inclusion of insurance proceeds within the parameters of that clause the court, citing *Smith v. Howell, supra,* again stated that the clause applies "only to net profits and such as are of the nature of rent." *Haskin,* 286 P.2d at 136.

Admittedly these cases are interpreting the clause within the context of the redemption statute. The *Haskin* court noted that fact. *Id.* However, the *Haskin* court also recognized that a definition of the clause "rents, issues, and profits" as "the land itself" has appeared in cases from other jurisdictions in contexts other than that of a redemption statute. *Id.*

This court believes that there is sufficient direction from the language of O.R.S. 86.010 and the case law cited in the analysis of the deed of trust and the assignment of rents to hold that in Oregon, with regard to income paid arising out of the use of real estate, a security transaction will fall within the exclusion of O.R.S. 79.1040(10) only if that income is in the nature of rent. Rent is payment for the right to possession, use and control of a legally cognizable interest in real estate. If the income flow off the property is in the nature of rent, O.R.S. 86.010 recognizes it may be mortgaged or pledged. Proof of that security interest must be filed in the county where the related real estate is located. *See* O.R.S. 93.643.

 There are a wide variety of clauses used in deeds of trust, mortgages, and assignments of rents and leases which are intended to grant a security interest in the income flowing from the use of specified real estate. This court does not intend to dictate the form such clauses should take. The court does note, however, that if the income is not payment for the right to possession, use, and control of a legally cognizable interest in real estate, the validity and perfection of the security interest

will be governed by the requirements of Article 9 of the Uniform Commercial Code. As noted below it may be found that a security interest does not attach or is not perfected if the collateral description does not reasonably identify what is described. Further, if the document is not filed with the Oregon Secretary of State, the interest in the income will not be perfected.

The bank urges the court to follow the lead of Judge Kishel in *In re Mid–City Hotel Associates,* 114 B.R. 634 (Bankr.D. Minn.1990) in interpreting the security documents together as granting the bank a security interest in all the motor inn real property as well as its revenues from its room rates. This court has declined to follow the holding of *Mid–City.* Because of the bank's heavy reliance on its analysis, however, this court will address it. There is presently no court, including Judge Kishel, which has held that revenues generated from hotel or motel room rates constitute rents. His holding rested on what he believed the specific language in both the mortgage and assignment document taken together revealed of the parties' intent regarding the scope of the interest granted.

> The mortgage granted an interest in "... the reversions, rents, issues, revenues and profits thereof, including (a) all interest of fee owner under the Ground Lease and in and to all present and future leases, tenancies and occupancies of space in the buildings and in and to any sublease of the aforementioned property ... and (b) all interests of [Plaintiff] in all rents, issues, profits, revenues, royalties, bonuses, rights and benefits due, payable or accruing (including all deposits of money as advanced rent or for security) under any and all leases or subleases and renewals thereof of said property ... (f) All other rents, issues and profits of the Real Estate from time to time, accruing, whether under leases or tenancies now existing or hereafter created...."

*Id.* at 636. The collateral assignment granted

> "... the immediate and continuing right to receive and collect all of the respective

rights to all rents, income, profits and issues of any kind ... arising out of or payable or collected from the real property ... and all leases and agreements for the leasing, use or occupancy of the Premises...."

*Id.* at 637. First, Judge Kishel found that the reference in the mortgage to "rents, issues and profits" from leasehold tenants was, because of the sentence structure, a subcategory of "rents, issues, and profits" and part of the larger phrase which was meant to be broader than that subcategory. Second, he noted that that interpretation coincided with the language of the collateral assignment granting a right to "all rents, income, profits and issues *of any kind* ... arising out of or payable or collected from the real property...." (emphasis added). Third, he defined the terms "revenue", "profits", and "issues and profits", more broadly than Oregon case law has and found nothing in Minnesota law to contradict his definitions.

The language in the bank's documents is not as broad. The deed of trust secures only the real property and "rents" flowing therefrom. The collateral assignment does not refer to income "of any kind." Finally, Judge Kishel did not analyze the limits of the clause "rents, income, profits and issues" in light of any Minnesota law. This court concludes that Minnesota has no statute similar to O.R.S. 86.010 nor any case law interpreting "rents, issues, and profits" as does Oregon.

The court declines to follow *Mid–City* for another reason. To the extent that *Mid–City* may be said to stand for the proposition that "rents, issues, and profits" clauses or any other more imaginative version thereof which appear in real property security instruments, may secure income arising from the operation of a business on the premises, this court believes it to be contrary to the interests of the financial and legal community. For example, the language in the bank's brief urges the court to find that the language of their assignment document, "all rents, leases, issues, income, profits, and *amounts receivable* ... whether now existing or hereafter arising out of or *in any way connect-*

*ed with* the real property ..." (emphasis added) is broad enough to encompass revenue from all business conducted on the motor inn premises. If the language used is broad enough to cover revenue from all motor inn business, it must also be broad enough when used by other creditors to cover revenues from *any* wholesale or retail business housed on real estate. Yet such income is largely generated from personal property and any security interests therein are universally recognized to be governed by Article 9. What the financial and legal community deserve is a legal interpretation for clauses which appear in collateral assignment documents that is not overly broad, is relatively precise, and supports a clear distinction between what is to be collaterally secured under the provisions of Article 9 and what is to be collaterally secured under the state land recording system. The *Mid–City* holding "muddies the waters" in this regard.

The assignment document before this court does not grant the bank a security interest in the revenue generated from the operations of the motel. This court, as discussed below, believes that those revenues are proceeds from the sale of personal property and as such are governed by the provisions of Article 9. The assignment document does not contain a description of collateral which reasonably identifies what this court believes to be accounts and inventory and the proceeds therefrom. Therefore a security interest in that revenue did not attach through execution of the assignment.

■ Further, the assignment document was not filed with the Oregon Secretary of State. Thus any security interest in personal property which may be said to have attached through execution of that document by the debtor is subject to avoidance by the debtor-in-possession. The bank cites *Security Bank v. Chiapuzio*, 304 Or. 438, 747 P.2d 335 (1987), in support of its position that a creditor's recording of its assignment in the real property records provides constructive notice of any interest in personal property which the assignment

may have granted. *Chiapuzio* did hold that perfection of a security interest in land and in a land sale contract by recording one of the interests in either the real property records or in the Article 9 files is sufficient to give notice to any party who has reason to search those records that other interests also may be affected. *Id.*, 747 P.2d at 344. *Chiapuzio* rests on unique facts and should be read with those facts in mind. In addition, the *Chiapuzio* court limited the applicability of its holding on constructive notice to persons holding both complete bundles of interests, *i.e.,* an interest in a land sale contract and an interest in the real estate itself. That holding is inapplicable to our facts.

### SECURITY AGREEMENT

■ The security agreement grants a security interest only in that personal property listed on the attached Exhibit A and the proceeds therefrom. This court concludes that the revenue generated by the motel operations constituted proceeds from the sale of personal property. However, none of the items listed in Exhibit A cover those proceeds. Therefore the bank does not have an interest in those revenues through the execution and record filing of that security agreement. The court's reasoning follows.

If the revenues generated from lodgings are not encompassed as collateral under Oregon real property law through the "rents" or "rents and profits" clause appearing in mortgages, or deeds of trust, or through collateral assignment documents, then such revenues must be personal property which, as collateral, is governed by the requirements of Article 9 of the Uniform Commercial Code (appearing in Oregon statutes at O.R.S. 79.1010 *et seq.*).

■ Under Article 9 personal property is divided into several different categories. All personal property in which the secured creditor wishes to take a security interest must fall within one of those categories, each of which is defined. One of those categories is "account". An account is defined as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, *whether or not it has been earned by performance."* O.R.S. 79.-1060(1) (emphasis added). In reading the various categories and by a process of elimination this court has concluded that the revenues generated from motel lodgings are proceeds of "accounts". The bank asserts that that category is limited to an "account receivable." Citing the Official Comments to that section, the bank defines an "account receivable" as a right to payment where the right has been earned by performance. The bank's argument continues that because the motel patron immediately pays for his room upon entering the contract for the room with the hotelkeeper, no account receivable is ever created. Thus room revenues cannot be proceeds from an account receivable. The court agrees that an "account receivable" is a right to payment where the right has been earned by performance. The court further notes, however, that although the 1962 Uniform Commercial Code had separate categories for "account" and for "contract right", the category "contract right" was eliminated under the 1972 version of the Code and subsumed into the category of "account". A "contract right" is defined by the Official Comments as a right to receive payment for goods or services which has not yet been earned by performance. Thus today the Code category of "account" which appears at O.R.S. 79.-1060(1) is broader than the definition of an "account receivable". It covers most choses in action which may be the subject of commercial financing transactions but which are not evidenced by an indispensable writing. *See* Official Comment to Uniform Commercial Code section 9–106 (1972).

The bank did not put on evidence to support the allegation that a motel patron always pays for his room upon entering the motel and engaging for the room. Certainly it has not been this court's experience that the patron always pays for lodgings before receiving them. Assuming for the sake of the legal analysis, however, that this is true, it is logical, applying the termi-

nology and structure of Article 9, to consider the funds to be proceeds of a "contract right" which was created when the parties entered their agreement concerning the lodging. Conversely, if the patron, after entering into the agreement for lodging, receives the services prior to payment, the payment would be proceeds from an account receivable. Either way the transaction falls within the Code category of "account".

Another category of personal property under the Code is "goods." Goods is defined as "all things which are movable at the time the security interest attaches or which are fixtures, but does not include money, documents, instruments, accounts, chattel paper, general intangibles, or minerals ..." O.R.S. 79.1050(1)(h). "Goods" is further subclassified into "consumer goods," "equipment", "farm products" and "inventory". O.R.S. 79.1090. "Inventory" is defined as goods "if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if the person has so furnished them...." O.R.S. 79.1090(4). Clearly, revenue generated from the holding for sale and sale of food and beverages is proceeds of inventory.

Exhibit A to the Security Agreement contains no reference to either accounts or inventory. Paragraph one contains a very specific itemization of the personal property covered. Food and beverages are not listed. Nor does the document contain a reference to any of the categories of personal property created under the Code. This may not be fatal in all instances; but it is dangerous, when attempting to take a security interest in an intangible chose in action, not to use the category descriptions created under the Code. Although under the Code courts have attempted to abandon the exact descriptional requirements for collateral which existed pre-Code, the Code still requires that the description reasonably identify what is being described. O.R.S. 79.1100.

Paragraph 4 does not serve to provide the bank with an interest in the room revenues because the language of that paragraph is limited to the "rents, issues, and profits" from leases.

In its brief the bank suggests that the holding in *In re Sumner*, 69 B.R. 758 (Bankr.D.Or.1986), supports its position that it is difficult to classify "rents" as a specific type of personal property. The *Sumner* court was dealing with a debtor's share in crops as rental and certain government subsidy payments. These facts make *Sumner* distinguishable from the issues with which this court is dealing. The *Sumner* court held that under the particular facts this personal property as collateral was governed by the provisions of Article 9. To the extent that it can be said the holding may stand for the proposition that one may receive a form of "rents" which is governed by the provisions of Article 9 and not excluded by the language of O.R.S. 79.1040(10), it undermines the bank's position.

The court shall enter an order denying the bank's motion to prohibit use of cash collateral.

This memorandum opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates 7052, they will not be separately stated.